2003-NMCA-127

81 P.3d 556

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Antonio GRAHAM, Defendant–Appellant.**

No. 22,913.

Court of Appeals of New Mexico.

Sept. 2, 2003.

Certiorari Granted, No. 28,286,
Nov. 3, 2003.

Patricia A. Madrid, Attorney General, Patricia Gandert, Assistant Attorney General, Santa Fe, NM, for Appellee.

John B. Bigelow, Chief Public Defender, Will O'Connell, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## *OPINION*

KENNEDY, Judge.

{1} Antonio Graham (Defendant) appeals his convictions for trafficking cocaine by possession with intent to distribute, contrary to NMSA 1978, § 30–31–20 (1990); tampering with evidence, contrary to NMSA 1978, § 30–22–5 (1963); child abuse (no death or great bodily harm), contrary to NMSA 1978, § 30–6–1 (2001); possession of marijuana over one ounce, less than eight ounces, contrary to NMSA 1978, § 30–31–23 (1990); possession of drug paraphernalia, contrary to NMSA 1978, § 30–31–25.1 (1997); and trafficking a controlled substance (cocaine) by distribution, contrary to Section 30–31–20(B)(1). Defendant was also adjudged guilty of being a habitual offender with three prior offenses. His sentence, including habitual offender enhancements, is just days shy of thirty-nine and a half years.

{2} Defendant argues that: (1) the evidence presented at trial does not support an eight-year habitual-offender enhancement on each of his felony convictions, (2) the evidence was insufficient to support his convictions, (3) he was denied the right to a speedy trial, (4) the district court erred in not dismissing the charges against him because the evidence used against him was the product of an illegal arrest, and (5) he did not receive effective assistance of counsel. With the exception of the first two issues, Defendant appeals his sentence and his convictions pursuant to *State v. Franklin*, 78 N.M. 127, 428

P.2d 982 (1967) and *State v. Boyer,* 103 N.M. 655, 712 P.2d 1 (Ct.App.1985).

{3} We find that there was insufficient evidence to support Defendant's conviction for negligent child abuse. We therefore reverse the district court on that issue and remand for further proceedings consistent with this opinion. We cannot determine that the enhancement of Defendant's sentence incorrectly calculated his prior offenses under *State v. Linam,* 93 N.M. 307, 600 P.2d 253 (1979). We further find the remainder of Defendant's contentions to be without merit and affirm the district court.

**ENHANCEMENT OF DEFENDANT'S SENTENCE**

■ {4} Defendant argues that his thirty-nine and a half year sentence in this case is based on insufficient evidence that there were three visible prior felony convictions to trigger an eight-year habitual offender enhancement on each of his felony convictions when in fact, there were only two, which only supports a four-year enhancement on each count. Defendant concedes that this issue was not raised below; thus, the record on appeal is inadequate with regard to this issue. He requests a remand for a further hearing. Defendant's argument here is not sufficient to justify such an action.

■ {5} "This court has held that a convicted defendant may challenge the legality of his sentence for the first time on appeal, because the trial court has no jurisdiction to impose an illegal sentence." *State v. Bachicha,* 111 N.M. 601, 605, 808 P.2d 51, 55 (Ct.App.1991); *see also Koonsman v. State,* 116 N.M. 112, 113, 860 P.2d 754, 755 (1993) (granting petition to correct illegal sentence where *Linam* sequence was not followed); *State v. Crespin,* 96 N.M. 640, 643, 633 P.2d 1238, 1241 (Ct.App.1981) (stating that the trial court may not impose a penalty not authorized by the legislature). However, there must be some solid basis for challenging the sentence in order for an appellate court to take action.

{6} The State sought to have Defendant's sentence in this case enhanced by eight years on each felony count as Defendant was a habitual offender with three prior felony con-

victions. At his sentencing, Defendant admitted having been convicted of three prior felonies as alleged in the State's supplemental criminal information. Defendant's trial counsel stated that he knew of no reason Defendant should not plead to the habitual information. The State submitted three judgment and sentence forms, showing the sequence noted below. Defendant supplemented the record with the criminal information filed in case number 91–304; this information was not available to the district court at the time of sentencing in this case. Thus, the sequence of conviction/offense is as follows:

| Case Number | Offense Date | Conviction Date |
| --- | --- | --- |
| 91–124 | 11 October 1990 | |
| 91–304 | 2 September 1991 | 26 May 1992 |
| 93–228 | 28 June 1993 | 18 October 1995 |

Unfortunately, the information we possess indicates when the crime was committed in 91–304, but we are still left without a date of conviction in 91–124. *See State v. Castillo,* 105 N.M. 623, 624, 735 P.2d 540, 541 (Ct.App. 1987) (stating that date of conviction, not sentencing, is operative in *Linam* calculation). In *Linam,* this Court first held that "in a proceeding to enhance [a] sentence for a third or fourth felony, *each* felony must have been committed after conviction for the preceding felony." *Linam,* 93 N.M. at 309, 600 P.2d at 255.

{7} In its supplemental information at trial, and now in its brief, the State urges us that the conviction in case number 91–124 dates from August 12, 1991. The face of the judgment itself states that the sentence was imposed on October 21, 1991, and that it was filed November 20, 1991. The State is correct that the record contains nothing to show that the date of conviction is anything other than what the State says it is—August 12, 1991. The date of Defendant's conviction in 91–124, not the date of sentencing, is crucial because the date of the verdict or plea determines the date of conviction. *See Castillo,* 105 N.M. at 624, 735 P.2d at 541.

{8} All of Defendant's prior convictions were apparently from the Otero County district court; if Defendant has evidence that he did not plead guilty or was convicted on August 12 and feels that a closer review or correction of sentence is needed, Defendant

should seek any further remedy by post-conviction proceedings. *See* Rule 5–802 NMRA 2003; *see also Patterson v. LeMaster,* 2001–NMSC–013, ¶ 1, 130 N.M. 179, 21 P.3d 1032. *Cf. State v. Herrera,* 2001–NMCA–073, ¶ 37, 131 N.M. 22, 33 P.3d 22 (indicating that when the record does not support the factual basis for a contention that may be raised for the first time on appeal, the preferred method of resolution of the issue is in habeas corpus proceedings). There being no evidence before us to indicate that the district court entered an illegal sentence, we affirm the court's enhancement of Defendant's sentence.

## BACKGROUND FOR REMAINING ISSUES

{9} On September 1, 2000, Defendant was arrested by Officers Lee Wilder and Dusty Collins outside the home at which he had been living for a little over a year. The officers had a warrant for Defendant's arrest concerning other matters, and had driven to his house to effect his arrest. As the officers approached Defendant's house, Defendant, Nicole Norris, and Latonia Thompkins were leaving to go to Ms. Thompkins' residence. Defendant and his companions left Defendant's house almost immediately after two male visitors with whom Defendant and Ms. Thompkins had been smoking marijuana in Defendant's living room. Defendant was getting in Ms. Norris' truck when the officers approached. On seeing them, Defendant appeared to drop an article behind the truck's seat. Later investigation revealed packets of drugs behind the seat, below where Defendant had rested his hand. Ms. Thompkins and Ms. Norris testified that on the day of Defendant's arrest and on previous occasions, they had purchased drugs from Defendant.

{10} Incident to Defendant's arrest, the officers approached his house. Defendant's girlfriend, Amanda Kelly, who resided in the house along with Defendant and their two infants, met the officers at the front door. As he waited by the front door, Officer Wilder smelled a strong odor of burnt marijuana coming from inside the house. Ms. Kelly did not permit the officers to enter the house. Thus rebuffed, the officers obtained a search warrant, which they served approximately an hour later. When the officers went inside the house, they noted that the house was dirty. Officer Collins searched the house, including a dresser in the master bedroom. In the back of its top left-hand drawer, he found some marijuana and thirteen rocks of crack cocaine. A marijuana pipe was in the right-hand drawer. Some rolling papers, marijuana seeds, and residue were on top of the dresser. A crib was in the master bedroom. Officer Collins found a bud of marijuana in the crib under a stuffed animal. In the living room, Officer Collins found a marijuana "roach" on the floor in front of the sofa in an area he said was accessible to Defendant's and Ms. Kelly's two children who were inside the house.

{11} Ms. Kelly briefly testified at trial. Virtually the first order of business for the State when she took the stand was to present and seek the admission of a photograph of her children and establish their young ages. When asked what she knew about marijuana, Ms. Kelly stated that she did not know that the marijuana that was found on the floor and in the crib was there. When the prosecution asked how she felt about it, she said, "I don't know. I—I just wish [Defendant] hadn't had done it." In response to a later question, she stated that her children "probably would have ate [sic] it and got sick" if they had gotten hold of the marijuana.

## SUFFICIENCY OF THE EVIDENCE

### Standard of Review

{12} In reviewing a sufficiency of evidence claim, "[w]e view the evidence in the light most favorable to supporting the verdict and resolve all conflicts and indulge all inferences in favor of upholding the verdict." *State v. Hernandez,* 115 N.M. 6, 26, 846 P.2d 312, 332 (1993).

We determine whether the evidence supports any conceivable set of rational deductions and inferences that logically leads to the finding in question. We must be satisfied that the evidence was sufficient to establish the facts essential to conviction with the level of certainty required by the applicable burden of proof. To support a conviction under a beyond a reasonable doubt standard, the evidence and inferences drawn from that evidence must be

sufficiently compelling so that a hypothetical reasonable factfinder could have reached "a subjective state of near certitude of the guilt of the accused." *State v. Maes*, 2003–NMCA–054, ¶ 3, 133 N.M. 536, 65 P.3d 584 (quoting *State v. Wynn*, 2001–NMCA–020, ¶ 5, 130 N.M. 381, 24 P.3d 816) (internal citation omitted).

**Convictions for Possession, Trafficking, and Tampering with Evidence**

{13} Although Defendant summarily states that none of his convictions are supported by sufficient evidence, his brief-in-chief provides argument and authority regarding only the child abuse conviction. Lack of sufficient evidence to support a conviction is something this Court will notice even if not argued if it constitutes "fundamental error." *See, e.g., State v. Doe*, 92 N.M. 100, 102, 583 P.2d 464, 466 (1978). However, *Boyer*, 103 N.M. at 659, 712 P.2d at 5, guides counsel to tell us what facts exist for and against Defendant's propositions and to make some argument. When Defendant walked out of his house to the truck, the officers were already converging to arrest him on a warrant. Upon Defendant's observing them, the facts indicate he tried to conceal packets of drugs by dropping them behind the seat of the truck in which the women were about to leave. Upon further investigation, the officers discovered drugs in the vehicle. The women with whom he was leaving testified that they had bought drugs from Defendant as recently as that day. The testimony strongly supported the jury's conclusion that Defendant possessed and was dealing drugs, tampered with evidence by trying to conceal it, and possessed drug paraphernalia. Based on the strength of this evidence, we find it sufficient and affirm Defendant's convictions on those charges.

{14} We now turn to the charge of negligent child endangerment.

**Negligent Child Abuse**

*Standard of Proof/Elements*

{15} Defendant argues that the State had insufficient evidence to prove criminal negligence to secure a child abuse conviction under Section 30–6–1. The pertinent portions of that statute state:

A.   As used in this section:

. . . .

(3) "negligently" refers to criminal negligence and means that a person knew or should have known of the danger involved and acted with a reckless disregard for the safety or health of the child.

. . . .

D.   Abuse of a child consists of a person knowingly, intentionally or negligently, and without justifiable cause, causing or permitting a child to be:

(1) placed in a situation that may endanger the child's life or health[.]

{16} The district court correctly instructed the jury in this case that to find Defendant guilty of child abuse, the State was required to prove beyond a reasonable doubt that: (1) Defendant caused the children "to be placed in a situation which endangered [their] life or health;" (2) that he acted "intentionally or with reckless disregard," the latter of which means that Defendant "knew or should have known [that] the [D]efendant's conduct created a substantial and foreseeable risk" that Defendant disregarded; and (3) Defendant "was wholly indifferent to the consequences of the conduct and to the welfare and safety of [the children]." *See* UJI 14–604 NMRA 2003.

*Child Endangerment: Legal Standard*

{17} We do not allow a conviction for child abuse by endangerment to be based on "a mere possibility, however remote, that harm may result from Defendant's acts; instead, we conclude that the legislature intended [to punish conduct that created] 'a reasonable probability or possibility' that the child will be endangered." *State v. Massengill*, 2003–NMCA–024, ¶ 45, 133 N.M. 263, 62 P.3d 354 (quoting *State v. Ungarten*, 115 N.M. 607, 609, 856 P.2d 569, 571 (Ct.App. 1993)). Moreover, the conduct must present " 'potentially serious consequences to the life or health of a child.' " *Id.* ¶ 46 (quoting *State v. Trujillo*, 2002–NMCA–100, ¶ 21, 132 N.M. 649, 53 P.3d 909). This requires a showing of criminal, as opposed to civil, negligence.

*Santillanes v. State,* 115 N.M. 215, 223, 849 P.2d 358, 366 (1993).

{18} Our courts have not sustained convictions where children were not actually harmed, unless the children were put in a direct line of physical danger. For example, this Court has concluded that substantial evidence existed to support the charge of child abuse where a defendant's knife thrusts came dangerously close to a child, who could not tell if the knife thrusts were directed at his father or at him. *Ungarten,* 115 N.M. at 609–610, 856 P.2d at 571–72. Likewise, in *State v. McGruder,* 1997–NMSC–023, ¶ 38, 123 N.M. 302, 940 P.2d 150, our Supreme Court determined that a jury could view the defendant's conduct as endangering either the life or health of the child because the defendant, who had already killed an occupant of an apartment, pointed a gun at the child's mother while the child was standing behind her and threatened to kill the mother if car keys were not turned over to him. Additionally, in *State v. Santillanes,* 2001–NMSC–018, ¶ 38, 130 N.M. 464, 27 P.3d 456, our Supreme Court upheld a conviction for criminally negligent child abuse when the defendant drove while intoxicated with her children in the car. Here, where the State asks us to infer a dangerous situation from the location of marijuana found during the search and the presence of children nearby, there is insufficient evidence of Defendant acting so as to pose an immediate and direct threat to his children.

{19} Complementing the holdings in the cases discussed above, we have been clear that mere proximity to a dangerous situation is not sufficient to support a conviction for child endangerment. In *Trujillo,* 2002–NMCA–100, ¶¶ 19–20, 132 N.M. 649, 53 P.3d 909, we held that no "reasonable probability or possibility" of endangerment existed when a daughter, not in "direct line of danger," witnessed her father abusing her mother. However, in that case, we suggested that the State might fairly seek a conviction based on the risk of emotional harm to a child who watched her mother be beaten if an "adequate evidentiary foundation" was laid. *Id.* ¶ 20. In *State v. Roybal,* 115 N.M. 27, 34, 846 P.2d 333, 340 (Ct.App.1992), this Court held that there was insufficient evidence that the defendant's daughter was actually placed in danger when the child watched her parent conduct a drug transaction, while she was inside the defendant's vehicle, even though drug transactions might be attended by violence.

*Child Endangerment: Evidentiary Sufficiency*

{20} Because most of the trial focused on Defendant's drug dealing, the charge of child abuse was given scant attention by both sides. In its opening statement, the State presented only one theory for the charge, that being that Defendant: "Commit[ed] child abuse for [leaving] the marijuana [lying] around where the children can get it." The State also promised to prove that the crib belonged to Defendant's child.

{21} When asked how the marijuana got in the house, Ms. Kelly testified "I suspect [Defendant] put it there?" After their arrest, Ms. Kelly said that Defendant told her that he had meant to "pick up the drugs that was [sic] in the drawer" while she was gone that afternoon. There was no testimony elicited that the crib was used for either one of the children, despite the promise of evidence in opening statements that it was. Ms. Kelly did not know there was any marijuana in the crib, or that there was a roach on the floor. There was no testimony as to where the children were in relation to the marijuana that was found. The only evidence that was presented at trial concerning child endangerment was elicited in the following exchange with Ms. Kelly:

Q: [prosecutor] What do you think would have happened—I'm sorry,—if your kids had gotten the marijuana?

A: They probably would have ate [sic] it and got sick.

This testimony was received without objection by the defense. In analogous situations, we have held that inadmissible testimony to which no objection is made has only such probative value as its rational persuasive power. *See State v. Vigil,* 97 N.M. 749, 752, 643 P.2d 618, 621 (Ct.App.1982). The rational persuasive power of Ms. Kelly's testimony is minimal for the reasons that follow. Ms.

Kelly's lay opinion in this regard is no better founded or relevant to the inquiry than the equally persuasive testimony that was rejected in *In re New Mexico Liquor License No. 4035*, 118 N.M. 545, 546, 883 P.2d 131, 132 (1994) (holding statement that "greater availability of alcohol will increase the possibility of [accidents] involving harm in our community" to be so speculative as to be irrelevant) (internal quotation marks and citation omitted). We explain.

{22} Under Rule 11–701 NMRA 2003, which governs lay testimony, Ms. Kelly could testify to things that were rationally based on her perceptions. She may also give opinions that are "helpful to a clear understanding of the witness's testimony or the determination of a fact in issue." Rule 11–701(B). Ms. Kelly did not testify that she was familiar with marijuana, or to any background she had with marijuana that would give rise to her opinion that it might make the children ill; nor did Ms. Kelly explain how her perceptions led to her opinion. If called upon to merely identify the drug, such a lack of foundation would render even simple identification of the drug inadmissible. *State v. McKee*, 91 Ohio St.3d 292, 744 N.E.2d 737, 742 (2001) (concluding that failure to lay experiential foundation for recognizing drug renders opinion inadmissible).

{23} Ms. Kelly's conclusory statement as to the likely effect of the drug's ingestion was given without eliciting any basis for the conclusion to which she testified. *State v. Nobach*, 309 Mont. 342, 46 P.3d 618, 622 (2002) (concluding that the court was "not persuaded that lay people are sufficiently knowledgeable about … the effects of drug consumption … to offer lay opinion testimony on [the] subject[ ], based on personal observations, under Rule [11–]701"). Ms. Kelly's testimony far exceeded the allowable scope of lay testimony. The remainder of Ms. Kelly's examination, both cross and redirect, centered on her testimony that she knew Defendant dealt drugs but did not report this to the officers and whether she would lie on the stand in order to preserve her immunity deal with the State and protect her children.

{24} Ms. Kelly's testimony exists in the record as the only link between the marijuana and a potential toxic danger to the children. There was no evidence that the other drugs were accessible to the small children. There was no other testimony regarding the degree of danger the drugs presented, had the children gotten hold of them. The State's forensic chemist identified the drugs, but offered no expert opinion as to the marijuana's toxicity or the harm, if any, it posed to the children. The district court was not presented with evidence to determine the potential danger involved in ingesting marijuana, although such evidence appears to exist. *See, e.g., Ravin v. State*, 537 P.2d 494, 508 (Alaska 1975) (stating that "[t]he lethal dose for marijuana is approximately 40,000 times the dose needed to achieve intoxication"; and that "[t]he equivalent ratio of intoxicating to lethal doses for alcohol is 4/10 and for barbiturates is 3/50").

{25} All that can be gleaned from the record concerning the whereabouts and supervision of the children on the day of Defendant's arrest is that Ms. Kelly left the house sometime "that afternoon." We do not know if the children were with her at that time or not. At 5:30 p.m., Ms. Kelly was back and the children were running around the house. Two men, Ms. Norris, and Ms. Thompkins were inside the house smoking marijuana while Defendant got dressed in the back of the house. We do not know where the children were in relation to the others in the house, or whether the "roach" that was found resulted from this or earlier smoking. We do not know if the children had access to the marijuana or their proximity to the drugs or drug users.

{26} Ms. Kelly's testimony takes on significance far beyond what it should. The State put a forensic chemist on the stand, but only to identify the drugs. The only evidence presented by the State that the drugs posed any danger to the children consisted of no more than the children were "running around" the house, and Ms. Kelly's statement that had the children gotten hold of the marijuana "they probably would have ate [sic] it and got sick." Requiring us to indulge every reasonable inference from the evidence to support the verdict does not allow us to speculate. *State v. Benton*, 118

N.M. 614, 615–16, 884 P.2d 505, 506–07 (Ct. App.1994) (holding that the rule requiring appellate courts to indulge in all reasonable inferences supporting the district court's ruling does not permit speculation). Here, we are faced with no direct evidence that the two children were ever close to the drugs that were found and no direct or circumstantial evidence that the presence of the drugs posed a direct and imminent threat of danger to them.

{27} Other than Ms. Kelly's testimony, the only remaining mention to the jury of the child abuse charge at trial that concerned drugs was in closing argument. There is insufficient evidence to prove the elements of the crime of negligent child abuse beyond the level of insinuation or innuendo. There is no doubt that Defendant is a criminal and a bad parent. He dealt drugs from the house he shared with the mother of two of his seven children. He had no other means of support, and, according to Ms. Kelly, is steeped in the culture of his criminal enterprise to a point where all he thinks about is "drinking, smoking dope, selling drugs, and running the streets." Drugs were found in a dresser in the bedroom of the house in which he lived, a bud of marijuana was found in a crib in that same room, and, following his having some associates over to smoke marijuana, a "roach" was found on the floor in front of the couch in the living room. However, none of these indicators of Defendant's bad character are probative evidence sufficient to satisfy the elements of negligent child abuse by endangerment as proscribed by Section 30–6–1(D).

{28} Given the lack of evidence to support the charge that Defendant's conduct placed his children's life or health in danger, we reverse Defendant's child abuse conviction.

**Defendant's Right to a Speedy Trial Was Not Violated**

{29} Pursuant to *Franklin*, 78 N.M. at 129, 428 P.2d at 984, and *Boyer*, 103 N.M. at 659, 712 P.2d at 5, Defendant contends that his right to a speedy trial was violated. Although Defendant filed a motion to dismiss the charges against him based on his right to a speedy trial, this claim was never raised at

a hearing and, thus, the district court was never given a chance to hear argument regarding the *Barker v. Wingo* factors which are to be examined in a speedy trial analysis. *See Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *see also State v. Rojo*, 1999–NMSC–001, ¶¶ 50–51, 126 N.M. 438, 971 P.2d 829 (stating that a right to a speedy trial must be raised in the district court and a ruling must be specifically invoked on that issue to properly preserve the issue for appellate review). Because this issue was not properly raised in district court, and Defendant never invoked a ruling, Defendant's speedy trial argument was not preserved for appellate review. *Rojo*, 1999–NMSC–001, ¶¶ 49–52, 126 N.M. 438, 971 P.2d 829.

{30} We reject Defendant's argument that his failure to preserve the speedy trial claim is not fatal to this issue on appeal because of our power to review cases for fundamental error. Rule 12–216(B)(2) NMRA 2003. We do not see that any fundamental error occurred. *See State v. Castro*, 2002–NMCA–093, ¶ 3, 132 N.M. 646, 53 P.3d 413 (indicating that fundamental error applies only when the elements of the crime have not been adequately proved or when there is a serious miscarriage of justice in the fact finder's substantive review of the evidence). In addition, Defendant both requested his own time extensions and agreed to the State's requested extension of time. This cannot be viewed as a violation of Defendant's right to a speedy trial.

**The District Court Properly Admitted Evidence Used Against Defendant at Trial**

{31} Again, pursuant to *Franklin*, 78 N.M. at 129, 428 P.2d at 984, and *Boyer*, 103 N.M. at 659, 712 P.2d at 5, Defendant contends that he was arrested without a warrant and without probable cause, and that the evidence used against him at trial was the product of an illegal arrest. Prior to his trial, Defendant filed a pro se motion to dismiss the charges against him based on this contention. The district court denied the motion. However there is no record of a hearing held on this motion. We hold Defendant's argument is without merit.

{32} The officers were properly executing a municipal warrant for Defendant at the time of his arrest. Additionally, while in the process of apprehending Defendant on the drug charges, the officers obtained a search warrant, based on probable cause and issued by a neutral and detached magistrate, to search Ms. Kelly's house. There is no indication in the record that the arrest, search, or seizure were illegal. Therefore, the evidence obtained as the result of Defendant's arrest was properly admitted.

**Defendant Received Effective Assistance of Counsel**

{33} Defendant argues, pursuant to *Franklin,* 78 N.M. at 129, 428 P.2d at 984, and *Boyer,* 103 N.M. at 659, 712 P.2d at 5, that his counsel was ineffective in that trial counsel concurred in continuances, should not have sought defense continuances, and should have moved to suppress evidence in this case. The assessment of effective assistance of counsel is a mixed question of law and fact and is reviewed de novo. *Duncan v. Kerby,* 115 N.M. 344, 347–48, 851 P.2d 466, 469–70 (1993). To prevail on such a claim, Defendant must prove both that his attorney's performance fell below that expected of a reasonably competent attorney, and that his defense was prejudiced as a result of this performance. *State v. Plouse,* 2003–NMCA–048, ¶ 6, 133 N.M. 495, 64 P.3d 522. Absent Defendant successfully carrying that burden, counsel is presumed to be effective. *State v. Trujillo,* 2002–NMSC–005, ¶ 38, 131 N.M. 709, 42 P.3d 814. Defendant provides us with no facts other than conclusory statements as to how his representation fell below a threshold level so as to prejudice his right to a fair trial.

{34} When Defendant admitted the allegations of the supplemental criminal information that he was the person convicted of three prior felony offenses in the sequence of case numbers 91–124, 91–304, and 93–228, he stated that he was satisfied with his attorney's services with regard to matters contained in the supplemental information. Defense counsel concurred in the plea. He stated on the record that he knew of no reason why Defendant's admitting the prior

convictions should not be accepted by the district court. On this record, and considering our discussion of Defendant's issues concerning speedy trial and the admission of evidence, there was no ineffective assistance of counsel.

**CONCLUSION**

{35} For the reasons stated above, we reverse the child abuse charge and we affirm the remainder of Defendant's convictions.

{36} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER, Chief Judge, and LYNN PICKARD, Judge.