2008-NMCA-002

175 P.3d 942

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Ramona LOPEZ, Defendant–Appellant.**

**No. 26,174.**

Court of Appeals of New Mexico.

Nov. 5, 2007.

Certiorari Denied, No. 30,759, Dec. 19, 2007.

Gary K. King, Attorney General, Santa Fe, NM, Max Shepherd, Assistant Attorney General, Albuquerque, NM, for Appellee.

John Bigelow, Chief Public Defender, Kathleen T. Baldridge, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

KENNEDY, Judge.

{1} Defendant Ramona Lopez appeals from a judgment after a bench trial convicting her of possession of methamphetamine, contrary to NMSA 1978, § 30–31–23 (2005), possession of methamphetamine with intent to distribute, contrary to NMSA 1978, § 30–31–22 (2006), and tampering with evidence, contrary to NMSA 1978, § 30–22–5 (2003). Defendant appeals her convictions, arguing on appeal that: (1) the convictions for possession and possession with intent to distribute violate her right to be free from double jeopardy; (2) the evidence of possession of methamphetamine was insufficient because the evidence was exposed to cross-contamination at the State's laboratory; (3) the affidavit for the search of her home did not provide probable cause, and therefore, all the evidence seized as a result of the warrant should be suppressed; and (4) her right to a speedy trial was violated.

{2} We agree with Defendant that her right to be free from double jeopardy was violated when she was convicted of both possession of methamphetamine and possession of methamphetamine with intent to distribute. We therefore vacate her conviction for simple possession of methamphetamine and remand for re-sentencing. Defendant's remaining arguments lack merit; we affirm her convictions for possession with intent to distribute and tampering with evidence.

## FACTS AND PROCEDURAL HISTORY

{3} The police in Roswell, New Mexico received complaints and information indicating that someone was trafficking narcotics from a private residence. In response, surveillance was set up on the residence. Several minutes after the surveillance had begun, two men drove up to the residence and approached the porch. One of the men, later identified as Ronald Abernathy, knocked on the door, the door opened, the hand inside touched Abernathy's hand outside the door, and then the door closed. A couple of minutes later, the door opened again, and once again, the hands touched. The two men stayed on the porch for several minutes, and

then left. The police stopped the men a few blocks from the residence for expired registration and a turn signal violation. During the traffic stop, a police officer, Sergeant Morris, asked the driver, Abernathy, if he could search him. Abernathy consented to the search, and a small amount of methamphetamine was found.

{4} Abernathy was taken to the police department and questioned. Officer Gonzales, one of the questioning officers, testified that Abernathy identified "Pill" as the person who handed him the methamphetamine at the residence. Officer Gonzales knew "Pill" to be the person who lived at the residence and to be Defendant's nickname.

{5} Based on the surveillance and the information received from Abernathy, the police sought out and received a search warrant for the residence and for Defendant. Upon execution of the search warrant, entering the house with the aid of a battering ram that evening, Defendant was found in a bedroom. In that same bedroom, police found a small amount of methamphetamine along with a digital scale with residue, two spoons, baggies, plastic wrap, aluminum foil, and other trafficking-related drug paraphernalia. Defendant was detained. Before the police could take Defendant to the police station for questioning, Defendant complained of pain and asked to be taken to the hospital. Upon arrival at the hospital, Defendant, accompanied by Detective Preston, was observed tugging repeatedly at her shorts. She eventually produced a bag containing three smaller bags containing methamphetamine, which was seized from her by Detective Preston.

## DISCUSSION

{6} We begin by addressing Defendant's arguments regarding the search warrant because it is a threshold issue and its resolution leads us to whether the rest of the evidence was admissible.

### Defendant Did Not Preserve Her Argument as to the Validity of the Search Warrant

■ {7} Defendant argues that the affidavit that provided probable cause to issue a search warrant was not valid. The State argues that this issue was not preserved for appellate review. Before Defendant can prevail on the merits of the argument that the search warrant was invalid, Defendant must demonstrate that the argument was preserved below. *State v. De Jesus–Santibanez*, 119 N.M. 578, 580, 893 P.2d 474, 476 (Ct.App. 1995). We agree with the State that that issue was not preserved.

■ {8} In order to preserve an issue for appeal, "it must appear that a ruling or decision by the district court was fairly invoked." Rule 12–216(A) NMRA. This Court has held that the rule "provides the lower court an opportunity to correct any mistake, . . . provides the opposing party a fair opportunity to show why the court should rule in its favor, and . . . creates a record from which this Court may make informed decisions." *State v. Joanna V.*, 2003–NMCA–100, ¶ 7, 134 N.M. 232, 75 P.3d 832, *aff'd*, 2004–NMSC–024, 136 N.M. 40, 94 P.3d 783. The objection must be timely and must specifically apprise the district court of the claimed error, resulting in an intelligent ruling from the district court. *State v. Jacobs*, 2000–NMSC–026, ¶ 12, 129 N.M. 448, 10 P.3d 127.

■ {9} In this case, Defendant objected to the district court's admission of the evidence based on the overbreadth of the search warrant. However, this objection was made by pretrial motion supported only by conclusory proposed findings of fact and conclusions of law submitted at the end of the bench trial. Defendant did not object to the admission of the evidence during trial. While Defendant brought up the issue of overbreadth during her cross-examination of the witnesses, we cannot say that this was enough to preserve the issue. The issue was neither argued in front of the district court, nor briefed by either party for review by the district court. Defendant does not argue that the issue was preserved for appeal, even after the State raised the problem in its answer brief.

{10} Also, much like the defendant in *De Jesus–Santibanez*, Defendant failed to "alert the district [court] of the need to ascertain the credibility" of what Defendant describes as unverified complaints of unknown persons.

119 N.M. at 580, 893 P.2d at 476. By not alerting the district court to determine the credibility of those complainants, "Defendant deprived the State of the opportunity to elicit facts that could have cured any seeming unreliability." *Id.* at 580–81, 893 P.2d at 476–77. We hold that by not articulating the issue Defendant raises on appeal regarding the affidavit not providing probable cause for the search, Defendant waived her claim. *Id.* at 580, 893 P.2d at 476.

### Defendant's Convictions for Possession of Methamphetamine and Possession of Methamphetamine With Intent to Distribute Violate Her Right to be Free from Double Jeopardy

{11} Defendant argues that her convictions for possession and possession with intent to distribute violate the state and federal constitutional guarantees against double jeopardy. Specifically, Defendant argues that the convictions subjected her to multiple punishments for the same offense. We agree that they did.

■ {12} We review Defendant's contention that her constitutional guarantees against double jeopardy were violated under a de novo standard of review. *State v. Contreras,* 2007–NMCA–045, ¶ 18, 141 N.M. 434, 156 P.3d 725, *cert. granted,* 2007–NMCERT–004, 141 N.M. 569, 158 P.3d 459. This is an issue which can be raised for the first time on appeal. *See* NMSA 1978, § 30-1-10 (1963) ("The defense of double jeopardy may not be waived and may be raised by the accused at any stage of a criminal prosecution, either before or after judgment.").

■ {13} "The constitutional prohibition against double jeopardy protects against both successive prosecutions and multiple punishments for the same offense." *State v. Mora,* 2003–NMCA–072, ¶ 17, 133 N.M. 746, 69 P.3d 256 (internal quotation marks and citation omitted). Claims of multiple punishments in violation of the Double Jeopardy Clause can arise from " 'double description' claims, in which a single act results in multiple charges under different criminal statutes, [or] 'unit-of-prosecution' claims, in which an individual is convicted of multiple violations of the same criminal statute." *State v. Ber-*

*nal,* 2006–NMSC–050, ¶ 7, 140 N.M. 644, 146 P.3d 289. Defendant argues that her single act of having methamphetamine at her home and on her person resulted in multiple criminal charges, i.e., possession of methamphetamine and possession of methamphetamine with intent to distribute, for the same offense. This argument implicates a double-description violation of the Double Jeopardy Clause.

■ {14} The fundamental case on the issue of double jeopardy is *Swafford v. State,* 112 N.M. 3, 810 P.2d 1223 (1991). In *Swafford,* our Supreme Court adopted a two-part test to determine if double jeopardy has been violated. *Id.* at 13, 810 P.2d at 1233. "The first step is to ask whether the conduct underlying the offenses is unitary, i.e., whether the same conduct of the defendant violates more than one statute." *State v. Carrasco,* 1997–NMSC–047, ¶ 22, 124 N.M. 64, 946 P.2d 1075. "The second step is to ask whether the Legislature intended to impose multiple punishments for the unitary conduct." *Id.* "If the conduct is not unitary, then the inquiry is at an end and there is no double jeopardy violation." *Bernal,* 2006–NMSC–050, ¶ 9, 140 N.M. 644, 146 P.3d 289. "If the conduct is unitary, the second prong of the *Swafford* test requires us to determine 'whether the [L]egislature intended multiple punishments for the unitary conduct.' " *Contreras,* 2007–NMCA–045, ¶ 20, 141 N.M. 434, 156 P.3d 725 (quoting *State v. Andazola,* 2003–NMCA–146, ¶ 15, 134 N.M. 710, 82 P.3d 77).

■ {15} The State argues that Defendant's conduct was not unitary. In its view, the conviction for possession is supported by the methamphetamine found on Defendant's dresser, and the conviction for possession with intent to distribute is supported by the methamphetamine seized from Defendant at the hospital. The State argues that the methamphetamine seized from Defendant' house was for her personal use, supporting the charge of possession, while the methamphetamine seized from Defendant at the hospital was for distribution, supporting the charge of possession with the intent to distribute. We agree with Defendant that her conduct was unitary.

{16} In determining whether Defendant's conduct was unitary, we consider whether Defendant's acts were "separated by sufficient indicia of distinctness." *Swafford,* 112 N.M. at 13, 810 P.2d at 1233. "Distinctness may also be established by the existence of an intervening event, the defendant's intent as evinced by his or her conduct and utterances, the number of victims, and the behavior of the defendant between acts." *Andazola,* 2003–NMCA–146, ¶ 16, 134 N.M. 710, 82 P.3d 77 (internal quotation marks and citation omitted). "[W]e consider such factors as whether acts were close in time and space, their similarity, the sequence in which they occurred, whether other events intervened, and the defendant's goals for and mental state during each act." *State v. Franco,* 2005–NMSC–013, ¶ 7, 137 N.M. 447, 112 P.3d 1104. We determine whether the conduct was unitary through the "elements of the charged offenses and the facts presented at trial." *State v. Stefani,* 2006–NMCA–073, ¶ 31, 139 N.M. 719, 137 P.3d 659. "The proper analytical framework is whether the facts presented at trial establish that the [judge] reasonably could have inferred independent factual bases for the charged offenses." *Franco,* 2005–NMSC–013, ¶ 7, 137 N.M. 447, 112 P.3d 1104 (internal quotation marks and citation omitted). When the officers executing the warrant broke down Defendant's door, she was immediately located in the bedroom in which the drugs and paraphernalia were found.

{17} The evidence reflects that Defendant and the drugs were all in the same location when the officers found Defendant. It is obvious that the methamphetamine Defendant possessed at the hospital came from her home. There was no evidence indicating that the methamphetamine she had at the home, whether it was discovered in the home or on her person at the hospital, and even if the substances discovered were different in quantity or packaging, should be separated into different categories of "mere possession," and "possession with intent to distribute." The evidence strongly supports the conclusion that Defendant possessed all methamphetamine in question at the residence and that its purpose could have been both for personal use and for distribution.

There are not "sufficient indicia of distinctness" to support a holding that Defendant's conduct from house to hospital was not unitary. *Cf. Contreras,* 2007–NMCA–045, ¶ 22, 141 N.M. 434, 156 P.3d 725 (holding that there was sufficient indicia of distinctness to support a finding that the defendant possessed cocaine for separate purposes before and after selling part of it to an undercover police officer and retaining the rest).

{18} We next turn to whether the Legislature intended to create separately punishable offenses. *State v. Cowden,* 1996–NMCA–051, ¶ 6, 121 N.M. 703, 917 P.2d 972. "The sole limitation on multiple punishments is legislative intent, and, unless the Legislature clearly authorized multiple punishments, we apply the test articulated in *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 . . . (1932), to determine that intent." *Franco,* 2005–NMSC–013, ¶ 12, 137 N.M. 447, 112 P.3d 1104 (alteration omitted) (internal quotation marks and citation omitted). We turn to applying the elements of the *Blockburger* test. *State v. Franco,* 2004–NMCA–099, ¶ 22, 136 N.M. 204, 96 P.3d 329, *overruled on other grounds by Franco,* 2005–NMSC–013, 137 N.M. 447, 112 P.3d 1104. "If [the] test establishes that one statute is subsumed within the other, the inquiry is over and the statutes are the same for double jeopardy purposes-punishment cannot be had for both." *Swafford,* 112 N.M. at 14, 810 P.2d at 1234. "However, if each offense requires proof of an element that the other does not, a presumption that separate punishments were intended arises." *Franco,* 2005–NMSC–013, ¶ 12, 137 N.M. 447, 112 P.3d 1104. The presumption that multiple punishments were not authorized by the Legislature arises when "proving violation of one statute always proves a violation of another (one statute is a lesser included offense of another, *i.e.,* it shares all of its elements with another), then it would appear the [L]egislature was creating alternative bases for prosecution, but only a single offense." *Swafford,* 112 N.M. at 9, 810 P.2d at 1229.

{19} Possession of methamphetamine, as charged under Section 30–31–23 required the State to prove that Defendant had methamphetamine in her possession, and knew that

it was methamphetamine or believed it to be some drug or other substance, the possession of which is regulated or prohibited by law. *See* UJI 14–3102 NMRA. Possession of methamphetamine with intent to distribute, as charged under Section 30–31–22 required that the State prove that Defendant had methamphetamine in her possession and knew it was methamphetamine or believed it to be some drug or other substance, the possession of which is regulated or prohibited by law, and Defendant intended to transfer it to another. *See* UJI 14–3104 NMRA.

{20} In comparing the elements of the two statutes, possession with intent to distribute has one additional element that simple possession does not have: intent to transfer the drug or substance to another. *See id.* However, proving a violation of possession with intent to distribute necessarily requires the State to prove Defendant possessed the methamphetamine. Therefore, under *Swafford,* simple possession is subsumed within possession with intent to distribute. 112 N.M. at 14, 810 P.2d at 1234. We hold that convictions for both possession and possession with intent to distribute violate the bar against double jeopardy.

**Defendant Waived Her Argument that the Evidence for Possession of Methamphetamine Was Insufficient**

{21} Defendant attacks the sufficiency of the evidence for her convictions of possession of methamphetamine and possession of methamphetamine with intent to distribute, arguing that the evidence was not bagged separately and that the chemist at the state laboratory spilled the evidence, exposing it to cross-contamination. Defendant further argues that based on the evidence being placed in the same bag and exposed to cross-contamination, the State could not prove that the evidence was methamphetamine.

{22} All tests on all alleged drugs were positive for methamphetamine. We hold that the results of the analysis, even considering the problems caused by the state's chemist, constitute substantial evidence sufficient to support the verdict. *State v. Kent,* 2006–NMCA–134, ¶ 10, 140 N.M. 606, 145

P.3d 86 ("We view the evidence in the light most favorable to supporting the verdict and resolve all conflicts and indulge all inferences in favor of upholding the verdict." (internal quotation marks and citation omitted)); *State v. Stefani,* 2006–NMCA–073, ¶ 39, 139 N.M. 719, 137 P.3d 659 (noting that the jury is free to reject the defendant's theory of the case). Defendant presented no evidence indicating that the substance found on the dresser was qualitatively different from that which came from her shorts, where the State presented substantial evidence that all alleged drugs were as charged.

{23} Defendant points us to no persuasive case law to support her argument concerning the commingling of the samples. Despite the state laboratory's carelessness, Defendant fails to point to any relevant case law that would support her theory. *See* Rule 12–213(A)(4) NMRA ("A contention that a verdict … is not supported by substantial evidence shall be deemed waived unless the argument has identified with particularity the facts or facts which are not supported by substantial evidence[.]"); *State ex rel. Children, Youth & Families Dep't v. Frank G.,* 2005–NMCA–026, ¶ 24, 137 N.M. 137, 108 P.3d 543 (noting that when the brief does not contain cited authority, appellate courts will not review the claim); *State v. Padilla,* 88 N.M. 160, 162, 538 P.2d 802, 804 (Ct.App. 1975); *Perez v. Gallegos,* 87 N.M. 161, 162, 530 P.2d 1155, 1156 (1974) ("The nature of claimed error on the part of the trial court must be specifically stated and argued."). We are not persuaded and hold substantial evidence supports the verdict.

**Defendant Did Not Preserve Her Argument that Her Right to a Speedy Trial Was Violated**

{24} Defendant argues that her right to a speedy trial was violated because of the length of time between her arrest and bench trial. The State argues that Defendant did not preserve this argument for appeal. We agree with the State and hold that Defendant's argument for a violation of her right to a speedy trial was not properly preserved.

{25} Defendant twice filed motions demanding a speedy trial, but the court below

never held a hearing on Defendant's demand. It is well-settled law that in order to preserve a speedy trial argument, Defendant must properly raise it in the lower court and invoke a ruling. *State v. Graham*, 2003–NMCA–127, ¶ 29, 134 N.M. 613, 81 P.3d 556 ("Because this issue was not properly raised in district court, and [d]efendant never invoked a ruling, [d]efendant's speedy trial argument was not preserved for appellate review."), *rev'd on other grounds by* 2005–NMSC–004, 137 N.M. 197, 109 P.3d 285; *see also State v. Rojo*, 1999–NMSC–001, ¶¶ 50–51, 126 N.M. 438, 971 P.2d 829 (holding that when the defendant did not "invoke a ruling on whether the State violated his constitutional right to a speedy trial," and the district court did not weigh the *Barker* factors, the argument was not preserved for appellate review). In *Graham*, this Court held that even though the defendant "filed a motion to dismiss the charges against him based on his right to a speedy trial, [the] claim was never raised at a hearing and, thus, the district court was never given a chance to hear argument regarding the *Barker v. Wingo* factors which are to be examined in a speedy trial analysis." *Graham*, 2003–NMCA–127, ¶ 29, 134 N.M. 613, 81 P.3d 556.

## CONCLUSION

{26} We hold that Defendant did not preserve her arguments regarding the validity of the search warrant, the sufficiency of the evidence, and whether her right to a speedy trial was violated. We further hold that because possession of methamphetamine is a lesser-included charge of possession with intent to distribute methamphetamine, and is subsumed within, it is a violation of double jeopardy to be convicted of both charges when Defendant's conduct was unitary. We reverse Defendant's conviction for simple possession of methamphetamine and affirm her remaining convictions.

{27} **IT IS SO ORDERED.**

WE CONCUR: JONATHAN B. SUTIN, Chief Judge, and MICHAEL D. BUSTAMANTE, Judge.