This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

**v.**                                                    **NO. 29,981**

**FABIAN LOZOYA,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**V. Lee Vesely, District Judge**

Gary K. King, Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Karl Erich Martell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**FRY, Chief Judge.**

Defendant appeals from his convictions for criminal sexual penetration and criminal sexual contact. In this Court's notice of proposed summary disposition, we proposed to affirm. Defendant has filed a memorandum in opposition pursuant to an

extension granted by this Court. We have considered Defendant's arguments, and as we are not persuaded by them, we affirm.

**The Six-Month Rule**

Defendant asserts that the six-month rule was violated in this case. [DS 7; MIO 11] As the Supreme Court granted an extension of the rule until July 17, 2009 [RP 101], and Defendant was tried prior to that date, on June 18, 2009 [RP 172], we hold that the rule was not violated.

**Speedy Trial**

Defendant asserts that his right to a speedy trial was violated. [DS 7; MIO 11-12] As Defendant concedes in his memorandum in opposition that this issue was not preserved [MIO 11], we decline to address it as a basis for reversal on appeal. *See State v. Lopez*, 2008-NMCA-002, ¶ 25, 143 N.M. 274, 175 P.3d 942 (filed 2007) ("It is well-settled law that in order to preserve a speedy trial argument, Defendant must properly raise it in the lower court and invoke a ruling.").

**The State's Failure to Provide Discovery Prior to Trial**

Defendant asserted in his docketing statement that (1) his rights to due process, confrontation, and effective cross-examination were violated because the prosecution failed to disclose during discovery the SANE nurse who testified at trial [DS 7]; (2) his rights to due process, confrontation, and effective cross-examination were violated

by the State's failure to "provide expert DNA witness disclosures" [RP 8]; and, (3) the State's failure to provide expert discovery prior to trial denied him his right to prepare a defense, to confront and cross-examine witnesses, and denied him a fair trial [DS 9]. In Defendant's memorandum in opposition, he has clarified and consolidated these issues such that his argument is that Defendant's rights were violated when the State failed to provide him with the SANE nurse's expert report prior to trial, did not permit him to interview the SANE nurse, failed to provide him with the DNA expert's CV, did not permit him to interview the DNA expert, and failed to provide him with DNA reports prior to trial. [MIO 4-5]

In Defendant's memorandum in opposition, rather than relying on generalized constitutional arguments without specific support in the law, he sets out the appropriate standard for when this Court will reverse when evidence that should have been produced in discovery is not disclosed until trial. [MIO 7] Under that standard, this Court will consider (1) whether the State breached a duty or intentionally deprived Defendant of evidence, (2) whether the evidence was material, (3) whether the failure to disclose the evidence until trial prejudiced Defendant, and (4) whether the district court cured the failure to timely disclose the evidence. *See State v. McDaniel*, 2004-NMCA-022, ¶ 8, 135 N.M. 84, 84 P.3d 701.

However, even if we were to agree with Defendant that the State failed to provide discovery that was required by Rule 5-501 NMRA, Defendant has made no argument that the evidence was material or that its late disclosure was prejudicial. The test for materiality is whether "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *McDaniel*, 2004-NMCA-022, ¶ 11 (internal quotation marks and citation omitted). As Defendant does not explain how the outcome of the proceeding could have been different had the information been timely disclosed or how he was prejudiced by the late disclosure, we decline to reverse on this basis. *See State v. Aragon*, 1999-NMCA-060, ¶ 10, 127 N.M. 393, 981 P.2d 1211 (stating that there is a presumption of correctness in the rulings or decisions of the district court, and the party claiming error bears the burden of showing error on appeal).

**Denial of the Motion for a Directed Verdict on the CSP Charge**

Defendant asserts that the district court erred in denying his motion for a directed verdict on the charge of criminal sexual penetration. [DS 8; MIO 8-10] When reviewing the denial of a directed verdict motion, we must determine

> whether sufficient evidence was adduced to support the underlying charge. The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element

4

essential to a conviction. When considering the sufficiency of the evidence, this Court does not evaluate the evidence to determine whether some hypothesis could be designed which is consistent with a finding of innocence. Instead, we view the evidence as a whole and indulge all reasonable inferences in favor of the jury's verdict, while at the same time asking whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*State v. Sena*, 2008-NMSC-053, ¶ 10, 144 N.M. 821, 192 P.3d 1198 (alterations omitted) (internal quotation marks and citations omitted).

Here, the State was required to prove beyond a reasonable doubt that Defendant caused the insertion to any extent of a finger into the victim's vagina, that the victim was unconscious or asleep, and that Defendant knew or had reason to know that the victim was unconscious or asleep. [RP 111] The following evidence was presented that would support the elements of the offense: The victim testified that she was asleep in bed and that when she woke up, her pants were down and Defendant was on top of her, touching her vagina with his fingers. [DS 4] It also appears that a statement Defendant made to the police was introduced in which Defendant said that he had put a finger in the victim's vagina while she was asleep. [DS 5; RP 33] This evidence was sufficient to support the charge of criminal sexual penetration and that the district court did not err in refusing to direct a verdict on this count. Although Defendant contends that he testified to an alternate and credible version of events, the

jury was free to reject Defendant's version of the facts. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829 (filed 1998).

**Sufficiency of the Evidence of Criminal Sexual Contact**

Defendant contends that the evidence was insufficient to support his conviction for criminal sexual contact. [DS 9; MIO 8-10] "In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. "The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (emphasis and alteration omitted) (internal quotation marks and citation omitted).

The State was required to prove beyond a reasonable doubt that Defendant touched or applied force to the unclothed breast of the victim without her consent, that the victim was unconscious or asleep, and that Defendant knew or had reason to know that the victim was unconscious or asleep. [RP 116] The following evidence was presented to support this charge: The victim testified that she awoke to Defendant touching her breast with his mouth and fingers while her bra and shirt were pulled up above her breasts. [DS 4] A DNA sample from the victim's left breast was consistent with Defendant's reference sample. [DS 6] This evidence was sufficient to support

Defendant's conviction, and the jury was free to reject Defendant's version of events. *See Rojo*, 1999-NMSC-001, ¶ 19.

**Prosecutorial Misconduct**

Defendant asserts that he was denied a fair trial due to prosecutorial misconduct. [DS 9; MIO 7-8] Defendant argues that the prosecutor committed misconduct by not providing discovery and by arguing that Defendant's statement that the victim was "into it" was callous. [MIO 8] Because Defendant failed to preserve this argument at trial, he argues that fundamental error requires reversal. [MIO 8]

As we have already concluded that Defendant has not established that he was prejudiced by the State's failure to provide discovery prior to trial, we do not address that claim here. As for the prosecutor's argument that Defendant's statement about the victim was callous, Defendant does not explain why this argument was improper. However, even if we were to conclude that it was improper, we would nevertheless conclude that the statement did not deprive Defendant of a fair trial. *See State v. Boergadine*, 2005-NMCA-028, ¶ 31, 137 N.M. 92, 107 P.3d 532 (holding that a few improper comments in the prosecutor's opening statement, while intentional and inappropriate, were not sufficiently egregious to rise to the level of fundamental error).

**Double Jeopardy**

Defendant asserts that his convictions for criminal sexual penetration and criminal sexual contact in this case violated double jeopardy under *Swafford v. State*, 112 N.M. 3, 810 P.2d 1223 (1991). [DS 9; MIO 2-4] We apply a de novo standard of review to the constitutional question of whether there has been a double jeopardy violation. *State v. Andazola*, 2003-NMCA-146, ¶ 14, 134 N.M. 710, 82 P.3d 77. Here, because Defendant was charged with violations of two different statutes, we conduct a double-description analysis. *See State v. DeGraff*, 2006-NMSC-011, ¶ 25, 139 N.M. 211, 131 P.3d 61. Pursuant to that analysis, we determine (1) whether the conduct is unitary and, if so, (2) whether the legislature intended to create separately punishable offenses based on the statutes. *Id.* ¶ 26. Defendant's argument focuses solely on the first prong of this analysis. [MIO 2-4] However, even if we were to agree with Defendant that the conduct at issue was unitary, this alone does not establish a double jeopardy violation. We must also look to legislative intent. To determine legislative intent, we compare the elements of the relevant statutes to determine if the legislature intended multiple punishments. *Swafford*, 112 N.M. at 8, 14, 810 P.2d at 1228, 1234. If each statute requires proof of a fact the other does not, then we presume that the legislature intended multiple punishments. *See id.* When this analysis is applied to offenses that may be charged in alternate ways, we look only

9

to the elements of the statutes as charged to the jury. *See State v. Armijo*, 2005-NMCA-010, ¶ 22, 136 N.M. 723, 104 P.3d 1114 (filed 2004).

Here, the jury was instructed that the elements of criminal sexual contact included that Defendant touched or applied force to the unclothed breast of the victim without her consent, that the victim was unconscious or asleep, and that Defendant knew or had reason to know that the victim was unconscious or asleep. [RP 116] The jury was instructed that the elements of criminal sexual penetration included that Defendant caused the insertion to any extent of a finger into the victim's vagina, that the victim was unconscious or asleep, and that Defendant knew or had reason to know that the victim was unconscious or asleep. [RP 111] As each of these offenses require proof of an element that the other does not (touching or the application of force to the victim's breast, on the one hand, and the insertion to any extent of a finger of the victim's vagina, on the other), there is a presumption that the legislature intended that these would be separately punishable offenses. Defendant has made no argument to suggest that there are other indicia of legislative intent that would require a determination that the legislature intended one of these offenses to be subsumed within the other. *See id.* (indicating that the presumption is not conclusive that it may be overcome with other evidence of legislative intent). Therefore, Defendant has not met his burden to demonstrate error on appeal. *See Aragon*, 1999-NMCA-060, ¶ 10.

Furthermore, as we discussed in our notice of proposed summary disposition, this Court has previously held that contact with a statutorily enumerated body part and penetration of another statutorily enumerated body part will support separate convictions even if the contact and penetration occurred as part of unitary conduct. *See State v. Pisio*, 119 N.M. 252, 261, 889 P.2d 860, 869 (Ct. App. 1994) (finding no double jeopardy violation when a defendant was convicted of criminal sexual contact for sucking on the victim's breast and criminal sexual penetration for performing oral sex on the victim, even though these acts were part of unitary conduct, and stating that while Count One (oral sex) and Count Nine (criminal sexual contact) were unitary, they were "proper units of prosecution" for double jeopardy purposes). Although Defendant cites to *State v. Gomez*, 2001-NMCA-080, ¶ 26, 131 N.M. 118, 33 P.3d 669, for the opposite conclusion, that statement in *Gomez* was dictum, since the case was reversed on the basis on an evidentiary error and the Court determined that the potential double jeopardy problem created by the jury instructions had not been preserved. Accordingly, we believe this case is controlled by the holding in *Pisio*, and we conclude that Defendant's right to be free from double jeopardy was not violated.

**Ineffective Assistance of Counsel**

Defendant asserts that he received ineffective assistance of counsel at trial. [DS 9; MIO 12-14] As Defendant failed to explain the factual predicate for this argument in either his docketing statement or his memorandum in opposition, we hold that Defendant has not made a prima facie case of ineffective assistance of counsel. *See State v. Bernal*, 2006-NMSC-050, ¶¶ 32-33, 140 N.M. 644, 146 P.3d 289 (describing the requirements for a prima facie case of ineffective assistance of counsel on direct appeal). Defendant is always free to attempt to establish this claim in a collateral proceeding.

**Registration as a Sex Offender**

Defendant asserts, pursuant to *State v. Franklin*, 78 N.M. 127, 428 P.2d 982 (1967), and *State v. Boyer*, 103 N.M. 655, 712 P.2d 1 (Ct. App. 1985), that he should not have to register as a sex offender for an indeterminate period of time after completing the sentence imposed in this case. [DS 10; MIO 14-15] As Defendant's memorandum in opposition concedes that he did not preserve this issue, and as he does not argue fundamental error, we decline to review Defendant's unpreserved argument.

**Cumulative Error**

Defendant asserts, pursuant to *Franklin* and *Boyer*, that cumulative error at trial warrants the reversal of his convictions. [DS 10; MIO 15-16]  As we have found no errors, cumulative error does not warrant reversal in this case.

**CONCLUSION**

Therefore, for the reasons stated in this opinion and the notice of proposed summary disposition, we affirm.

**IT IS SO ORDERED.**

_____
**CYNTHIA A. FRY, Chief Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**JONATHAN B. SUTIN, Judge**

13