2001-NMCA-080

33 P.3d 669

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Sebastian GOMEZ, Defendant–Appellant.**

No. 21,672.

Court of Appeals of New Mexico.

Aug. 27, 2001.

Certiorari Denied, No. 27,141, Oct. 10, 2001.

Patricia A. Madrid, Attorney General, Katherine Zinn, Assistant Attorney General, Santa Fe, NM, for Appellee.

Phyllis H. Subin, Chief Public Defender, Susan Roth, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

SUTIN, Judge.

{1} Defendant Sebastian Gomez appeals his convictions of criminal sexual penetration (CSP) of a minor, criminal sexual contact (CSC) of a minor, and kidnaping. The issues on appeal center on the trial court's exclusion of the child's inconsistent statements, the propriety of the court's comments on the child's testimony, and Defendant's decision not to accept the trial court's offer of a mistrial based on improper jury instructions. We reverse on the first two issues, and affirm on the third.

## I. Exclusion of Inconsistent Statements

### A. Background

{2} The State's main witness was the seven-year-old victim (Victim), who gave an unsworn, investigative Safehouse interview (Safehouse Interview), videotaped a few days after the incident at issue and ten months before trial. At trial, Victim testified, out of the presence of Defendant but before the trial court, through a videotape made specifically for trial pursuant to NMSA 1978, § 30-9-17 (1978) and Rule 5-504(B) NMRA 2001. Parts of each videotape were inconsistent, in whole or in part, with statements contained in the other.

{3} Defense counsel, in his cross-examination of Victim during the trial video, asked Victim whether she had told the truth on different occasions. Victim agreed that she had told her mother the "whole truth" and her father the "same truth." Defense counsel then asked her if she remembered giving the earlier Safehouse Interview and whether she had been truthful then. Victim agreed that she had "told [the Safehouse counselor] the whole truth, too" and that what she described during her trial testimony was "pretty much the same thing." Finally, Victim agreed that "the truth should be the truth, the same thing," implying within the context of the questioning that there was only one accurate version of the facts. There was no further mention of the prior Safehouse Interview during the videotaped trial testimony.

{4} Victim's trial testimony on direct examination was that one evening she was walking back from a visit to her aunt's house when she met Defendant, her next-door neighbor, who grabbed her. She said that he wrapped his arms around her and carried her against his chest, in a way that she could not see or scream, to the bedroom in his trailer next to her home where she was violated. Victim described the incident with some specificity.

{5} After the jury had seen and heard the videotaped trial testimony, both the direct and cross-examinations, defense counsel sought to introduce the Safehouse Interview as impeachment by a prior inconsistent statement under Rule 11-613(B) NMRA 2001. Rule 11-613(B) reads:

Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require. This provision does not apply to admissions of a party-opponent as defined in Subparagraph (2) of Paragraph D of Rule 11-801.

The State objected to the admission of the Safehouse Interview. Defense counsel countered that showing the Safehouse Interview videotape was proper under Rule 11-613(B), because during his cross-examination of Victim he reminded her of the Safehouse Interview, and Victim agreed that she consistently told the same truth in the Safehouse Interview as in her trial testimony.

{6} The trial court denied the admission of the Safehouse Interview videotape reasoning that Rule 11-613(B) prohibited its admission unless the child was available to deny or explain the inconsistencies. The trial court also thought the State would be impermissibly deprived of its opportunity to rehabilitate its complaining witness. The trial court never viewed the Safehouse Interview to determine its relevance or whether it contained crucial impeachment evidence.

{7} The differences between the two videotaped statements were substantive. Victim's Safehouse Interview testimony was that De-

fendant transported her by choking her from behind with her shirt and hair, and that Victim could not see him "at all" before he grabbed her. Ten months later at trial, Victim testified she saw Defendant "standing there" as she walked toward her home. She was asked, "He was facing you?" she responded, "Yes." Contrary to her Safehouse Interview testimony, she said he carried her in a bear-hug way that covered her eyes and mouth.

{8} During the Safehouse Interview, Victim said she did not see Defendant's "private," but at trial she said that she could see Defendant's "number one" [private part].

{9} In the Safehouse Interview, Victim was asked about penetration of her vulva, "Did he go inside?" She responded, "He kinda did . . . a little bit . . . [he] just poked." At trial, though, Victim stated, "I can't remember" whether she was penetrated and when asked if Defendant touched her "inside," Victim remembered being touched between the legs and demonstrated that Defendant touched her first from the front, then from the back, but showed no penetration.

{10} When asked during the Safehouse Interview whether his finger went inside her anus, Victim clearly answered, "No." Ten months later during direct examination at trial, the State asked, "He put a finger inside you?" Victim responded, "Yes, it felt like ['the' or 'a'] big finger." On cross-examination at trial, however, Victim stated that Defendant "pinched" her, the pinch caused "pain," and "he didn't stick his hand in the hole."

{11} During the Safehouse Interview, Victim said she kicked Defendant in the stomach to get away, but at trial she stated that she slapped him on the face to get away. During the Safehouse Interview, Victim said she only pushed Defendant's door to get out of his trailer and run away. At trial, she described in some detail how she had unhooked a sliding chain lock to get away. During the Safehouse Interview, Victim stated that Defendant told her he would kill her if she told anyone. Ten months later at trial, Victim embellished her testimony in that she said he said "when he escaped from jail," he would

"do it again," kill her, and hurt her family if she told anyone.

### B. Discussion

■ {12} Abuse of discretion is the standard of review on appeal of a trial court's ruling admitting a prior inconsistent statement pursuant to Rule 11–613. *State v. Morales*, 2000–NMCA–046, ¶ 16, 129 N.M. 141, 2 P.3d 878. Substantively, the "Sixth Amendment to the Constitution guarantees the right of an accused in a criminal prosecution 'to be confronted with the witnesses against him.' " *Davis v. Alaska*, 415 U.S. 308, 315, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). "Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested." *Id.* at 316, 94 S.Ct. 1105; *see State v. Fairweather*, 116 N.M. 456, 463, 863 P.2d 1077, 1084 (1993). Impeachment is crucial to effective cross-examination because it gives a party the opportunity to discredit a witness, so the jury properly has a way to determine whether a witness is untruthful or inaccurate. *Davis*, 415 U.S. at 316, 94 S.Ct. 1105. This is especially "important in the case of . . . the testimony of [an individual] whose memory might be faulty." *Id.* at 316 n. 4, 94 S.Ct. 1105 (internal quotation marks and citation omitted).

{13} Defendant does not contend he did not have the opportunity to cross-examine the chief witness against him. He complains he was deprived of his right to impeach her by demonstrating inconsistencies in her testimony. Not having been made aware of the Safehouse Interview statements, the jury could not compare those statements with her trial testimony made ten months later and was denied the opportunity to fully evaluate the Victim's credibility.

■ {14} As noted in the Advisory Committee Notes in regard to federal rule 613(b), "[t]he traditional insistence that the attendance of the witness be directed to the statement on cross-examination is relaxed in favor of simply providing the witness an opportunity to explain and the opposite party an opportunity to examine on the statement, with no specification of any particular time or sequence." The federal rule, identical to our

Rule 11–613(B), permits departure from the traditional, although often still preferred, method of confronting a witness with his inconsistent statement prior to its introduction in to evidence. *United States v. Moore,* 149 F.3d 773, 781 (8th Cir.1998); *United States v. Hudson,* 970 F.2d 948, 954–55 (1st Cir.1992); *Wammock v. Celotex Corp.,* 793 F.2d 1518, 1521–22 (11th Cir.1986). Rule 11–613(B) permits the same departure. Where a prior inconsistent statement of a prosecution witness is proffered after the witness has already testified, the statement may still be admitted as long as the witness is given an opportunity to explain or deny the statement and the opposing party is given an opportunity to examine the witness on the statement. This procedure fits within the "overriding mandate" regarding evidence, including impeachment evidence, which is that it be "relevant evidence that enhances the possibility of ascertaining the truth and doing justice." Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 607.03[2][b] (2d ed.2001); *see also* Rule 11–401 NMRA 2001 (definition of relevant evidence); Rule 11–402 NMRA 2001 (admissibility of relevant evidence); Rule 11–403 NMRA 2001 (exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time).

{15} The State created the Safehouse Interview videotape and was aware of its content. Victim was the only witness to the crucial facts at issue in the case. Defense counsel's cross-examination of Victim regarding the Safehouse Interview necessarily alerted the State to Defendant's interest in the Safehouse Interview. Although defense counsel did not at the time of the trial video confront Victim with contradictions between specific trial and specific Safehouse Interview statements, the State, aware that statements in the Safehouse Interview could prejudice its case, could have anticipated a defense strategy of proffering the Safehouse Interview at trial. The State could have followed up during the trial video by examining Victim on the content of the Safehouse Interview, or, as it did, could have awaited trial and sought to exclude the Safehouse Interview if proffered.

{16} That the State had the opportunity for rehabilitation, rather than whether the prosecutor chose to question Victim on her inconsistencies, is a key here to determining whether Rule 11–613(B) was satisfied. *Cf. State v. Lucero,* 109 N.M. 298, 304, 784 P.2d 1041, 1047 (Ct.App.1989) (court not persuaded by defense counsel who knew about a child's prior consistent statements offered under Rule 11–801(D)(1)(b) NMRA 2001 to rebut charge but argued that he could not cross-examine her about the statements because the opposing party did not elicit them on direct examination). The record does not reflect any showing by the State that it could not have questioned Victim further at the time of the trial video. Nor does the record reflect any showing by the State that it could not have recalled Victim during the trial for further questioning either in person or in another videotaped deposition. During her videotaped trial testimony, Victim stated she would agree to be questioned in front of the jury as long as Defendant was not present in the room. In exercising its discretion under Rule 11–613(B), under circumstances such as those in this case, the court should not merely assume that a witness cannot be recalled, or that judicial economy or inconvenience would be significant factors with regard to affording the opportunities stated in Rule 11–613(B). *See Hudson,* 970 F.2d at 953–56 (citing *United States v. Barrett,* 539 F.2d 244, 254–56 (1st Cir.1976) for the proposition that "defense counsel need not in the circumstances necessarily have had to confront [the witness] with the earlier inconsistent statements prior to their offer as part of the defense case; and that there was no basis for assuming that he could not be recalled by the government or that judicial economy and convenience would have justified the trial court's ruling.").

{17} In looking at the Rule 11–613(B) foundation requirements, in circumstances such as those in this case, the trial court should consider various factors, including: the statements alleged to be inconsistent; the unique circumstances based on the Section 30–9–17 trial video juxtaposed with the Safehouse Interview video taken ten months earlier by the State; the availability of and

practicality of recalling Victim in person or through another trial video; the significance of the issues to which the inconsistent statements relate; and the statements' probative value. The court should also determine whether the foundation requirements should be waived in "the interests of justice," under Rule 11–613(B) using much the same analysis. *Weinstein's Federal Evidence* § 613.05[4][b].

{18} The Safehouse Interview contained significant contradictions to Victim's trial testimony, about a range of details of the charges. The jury was denied the opportunity to assess the credibility of Victim and inform its determination of the facts by viewing the changes in the testimony of the seven-year-old victim over the ten months between the two video sessions. The trial court erred in refusing to admit the Safehouse Interview for the jury's review without first engaging in a full analysis of all factors important to an informed exercise of discretion.

## II. Court's Comments

{19} Victim's taped trial testimony concluded with words from the trial court: "[Victim], you did very well. I'm very proud of you.... [Y]ou did very well and we're all very proud of you, that you came here and you told us the truth." This portion of the videotape was shown to the jury without objection.

{20} "A trial judge should studiously avoid making any remark or statement in the presence of the jury concerning factual issues or which may be construed as conveying his opinion concerning the merits of the case." *State v. Sanchez*, 112 N.M. 59, 66, 811 P.2d 92, 99 (Ct.App.1991). When a comment, taken in context, can fairly be said to be a comment by the trial court on the credibility of a witness, reversal is appropriate. *See, e.g., State v. Henderson*, 1998–NMSC–018, ¶ 17, 125 N.M. 434, 963 P.2d 511. The comments of the trial court gave rise to a presumption of prejudice because they suggested to the jury that the court thought Victim was telling the truth in her trial testimony. *See State v. Ortiz–Burciaga*, 1999–NMCA–146, ¶ 10, 128 N.M. 382, 993 P.2d 96.

{21} Defendant did not preserve this error below. He has raised the issue as a matter of fundamental error, citing *State v. Osborne*, 111 N.M. 654, 662, 808 P.2d 624, 632 (1991), ("The doctrine of fundamental error, even though it applies only under exceptional circumstances, does apply to prevent a miscarriage of justice[,] ... if the question of guilt is so doubtful that it would shock the conscience to permit the conviction to stand.") (internal quotation marks and citations omitted).

{22} Our Supreme Court recently examined the fundamental error doctrine exception to our general appellate rules in *State v. Traeger*, 2001–NMSC–022, ¶¶ 17–25, 130 N.M. 618, 29 P.3d 518. Because we reverse on the issue of exclusion of the Safehouse videotape testimony, we need not, and do not, decide whether the comments of the court require a fundamental error result under *Traeger*. We take this opportunity, however, to say that the court's affirmation of Victim's credibility, when combined with the exclusion of the Victim's inconsistent statements, substantially increase the concern that the comments interfered with the independence of the jury and bring the issue to the brink of fundamental error. On remand, no such comments should be made.

## III. Jury Instructions

{23} Defendant asserts his convictions are illegal because the jury instructions on CSP and CSC were impermissibly confusing to the jury, *see State v. Parish*, 118 N.M. 39, 42, 878 P.2d 988, 991 (1994), and violated Defendant's constitutional protection against double jeopardy. *Herron v. State*, 111 N.M. 357, 358–61, 805 P.2d 624, 625–28 (1991). The jury received one instruction on CSC and one instruction on CSP. Both included language referring to either "the vulva or the anus," even though some evidence supported CSC and CSP of each orifice. During the trial conference settling jury instructions, defense counsel argued that the instructions were vague and confusing. His concern was that the jury could convict Defendant of both the greater offense of CSP and the lesser offense of CSC based on the same conduct: "Be-

cause it's not clear what the activity for Count 1 is, and not clear what Count 2 is, . . . for the same conduct, they could find him guilty of both and we would not know." The prosecutor explained that she tried to avoid overcharging and maintained it was proper under the evidence to charge one count of "touching" (CSC) and one count of penetration (CSP)—and argue both in terms of both the anus and the vulva.

 {24} As predicted by defense counsel, the jury was confused by the instructions, as shown by their question during deliberation: "Is it true that if we find the Defendant guilty of sexual penetration in one event, the Defendant is *not* guilty of sexual contact?" Counsel conferred with the court at length about what answer should be sent back to the jury. The court suggested that jury confusion was so great that a mistrial was required, stating, "Now's the time to declare the mistrial and start it over." The State asked the court to answer the jury's question. Defense counsel agreed: "I think that's the thing to do, rather than declare a mistrial." So without objection, the court prepared its response: "Yes, you can find penetration *or* contact with respect to the anus AND you can find penetration *or* contact with respect to the vulva."

{25} We agree with the State that though Defendant raised serious concerns about the jury instructions, he waived any error on this issue by declining the trial court's offer of a mistrial. That is, Defendant has no right to ask for a new trial on the issue of faulty jury instructions after he rejected the court's offer to declare a mistrial. *State v. Musgrave,* 102 N.M. 148, 150, 692 P.2d 534, 536 (Ct.App. 1984).

{26} On remand, however, we suggest the parties and trial court review *Herron* before preparing the jury instructions. 111 N.M. at 361, 805 P.2d at 628. Under the facts presented at the original trial in this case, the parties are entitled to instructions for one count of kidnaping plus one count of CSP with a step-down instruction for the lesser-included offense of CSC. Pursuant to *Herron,* we see no break in Defendant's "continuous attack" to support conviction of more that one count of CSP. *Id.* Using the same

rationale, CSC can only be charged as a lesser-included offense of the one CSP. *Id.*

## IV. Conclusion

{27} We reverse and remand this case for retrial consistent with this opinion. The parties should note that a new ruling supported by new findings on whether Victim will testify by videotaped deposition pursuant to Section 30-9-17 and Rule 5-504(B) may be required. *Lucero,* 109 N.M. at 305, 784 P.2d at 1048.

{28} **IT IS SO ORDERED.**

WE CONCUR: MICHAEL D. BUSTAMANTE, Judge and IRA ROBINSON, Judge.