This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                      NO. 28,335

**JAMES TABOR,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CHAVES COUNTY**
**Charles C. Currier, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
James W. Grayson, Assistant Attorney General
Albuquerque, NM

for Appellee

Law Offices of Nancy L. Simmons, P.C.
Nancy L. Simmons
Albuquerque, NM

for Appellant

## MEMORANDUM OPINION

**WECHSLER, Judge.**

Defendant appeals his convictions for three counts of Criminal Sexual Penetration of a Child (CSPC), contrary to NMSA 1978, Section 30-9-11(D)(1) (2009). On appeal, Defendant claims: (1) expert opinions on the cause of the child's injuries were erroneously admitted; (2) DNA evidence should have been excluded because the chain of custody was not properly established; (3) the district court made improper statements to the child during the administration of the oath; and (4) cumulative error requires that the convictions be reversed. We affirm Defendant's convictions.

**FACTUAL BACKGROUND**

Defendant lived with the child and her mother (Mother). While moving into a new residence, Mother stepped outside to smoke a cigarette. When she went back inside, she saw the child standing on the toilet, facing the wall, with her shorts and underwear around her ankles. Defendant had a visible erection. When Mother asked what was going on, Defendant said he was sorry and that he did not know what he was doing. He told Mother that it had happened only once and would not happen again.

The child was examined by Kate Daniels, a sexual assault nurse examiner (SANE), and by Dr. Karen Carson. The child, Daniels, and Carson testified at trial. In addition, a forensic DNA analyst, Victor Cansino, testified regarding DNA tests and tests performed on items of clothing belonging to the child. Following the jury

verdict finding Defendant guilty of three counts of CSPC, Defendant appealed.

**EXPERT TESTIMONY**

Defendant asserts that it was error for the district court to allow medical experts, Daniels and Carson, to provide "ultimate" opinions regarding the cause of injuries suffered by the child. Defendant claims that the testimony of the "ultimate cause of the injuries" was "not based on scientific knowledge or techniques, but were explicitly based upon collateral information gleaned through interviews with the child and her [M]other." Defendant argues that, without the information gleaned from the child and Mother, neither expert would have been able to provide a "scientifically reliable opinion as to the ultimate cause of the rectal injuries." Defendant also contends that an expert cannot "implicitly vouch for the credibility of a complaining witness" by stating that the cause of certain injuries fit with the cause provided by the complaining witness. In other words, Defendant argues that the experts' testimony was in violation of our cases that prohibit an expert from stating that symptoms or injuries were caused by sexual abuse, and the experts' testimony regarding statements made to them by the child and Mother should have been excluded. We summarize the testimony from the experts and address each of Defendant's claim below. We conclude that the district court did not err in admitting the testimony of the medical experts.

Daniels testified about her examination of the child, stating that she found a

fresh injury, an oozing abrasion, and several healed injuries in the child's rectum. Daniels testified that the healed injuries included a tear that healed without the tissue coming together and two substantial tears that healed with formation of a flap. Daniels stated that the fresh injury and the abrasion would have occurred within twenty-four to forty-eight hours of the examination. According to Daniels, the child described being asked, on multiple occasions, to stand on a toilet while part of a penis was put into her rectum. The child also described an experience involving a penis being put into her mouth and her head being forcibly moved back and forth with the penis in her mouth. Daniels was allowed to testify about the child's statements so long as she did not refer to the identity of the perpetrator. Daniels testified that the physical injuries were consistent with the child's descriptions. In response to questioning from the prosecutor, Daniels testified that, in her opinion, "the statements that [the child] made to [Daniels] about the current incident for which [Daniels] saw her and the past incidents that she told [Daniels] about and the findings that [Daniels] found, they were consistent and indicative of sexual abuse."

Carson also testified about her examination of the child. Carson testified that she found several severe tears around the child's rectum that had healed. Two tears were of such severe magnitude that they had formed a flap when they healed and would have been caused by the forcible insertion of a large object. Carson noticed

that the child relaxed her anal and sphincter muscles easily, which she found significant because it is an ability learned by sexually-abused children and develops as a result of more than two episodes of anal penetration. The child told Carson that a "you-know-what" had been put into her bottom and that it had happened many times before. When asked if she could state to a reasonable degree of medical certainty what had caused the injuries to the child's rectum, Carson stated that she believed the child "was forcibly raped with a penis placed in her rectum which is consistent with her story." When asked if the child's injuries would be consistent with more than two occasions of having been anally raped, Carson stated that they would, but clarified that her answer was not based on the child's injuries but more on the fact that the child learned to relax her anal sphincter, which usually happens over time with more than one or two incidents. Carson agreed that, in her medical opinion, the child was subjected to repeated episodes of anal rape.

"[T]he admission of expert testimony or other scientific evidence is peculiarly within the sound discretion of the trial court and will not be reversed absent a showing of abuse of that discretion." *State v. Alberico*, 116 N.M. 156, 169, 861 P.2d 192, 205 (1993). In *Alberico*, our Supreme Court explained that, for admission of expert testimony based on Rule 11-702 NMRA, the expert must be qualified, the testimony must assist the trier of fact, and the testimony must be limited to the area of scientific,

5

technical, or other specialized knowledge in which they are qualified. *Alberico*, 116 N.M. at 166, 861 P.2d at 202. The district court has a duty to determine whether the expert testimony is reliable before it is admitted, and the court retains discretionary authority to decide whether separate proceedings are necessary for determining reliability of the testimony. *State v. Lente*, 2005-NMCA-111, ¶ 5, 138 N.M. 312, 119 P.3d 737.

While expert testimony may be admissible even if it pertains to an ultimate question to be decided by the jury, direct testimony pertaining to the credibility of a sexual abuse victim is prohibited. *Alberico*, 116 N.M. at 175, 861 P.2d at 210-11. The *Alberico* Court held that an expert may not testify with regard to the credibility of the complaining witness, may not give testimony on the identity of the perpetrator, and may not provide testimony to show that symptoms or injuries were, in fact, caused by sexual abuse. *Id.* at 175-77, 861 P.2d at 211-13. However, in addressing the issue of whether expert testimony was admissible to show that the victim suffered post-traumatic stress disorder (PTSD) symptoms consistent with sexual abuse, the Court held that a qualified expert could testify that the PTSD symptoms suffered by the alleged victim "are consistent with those suffered by someone who has been sexually abused." *Id.* at 178, 861 P.2d at 213-14.

Evidence regarding injuries observed during a medical examination and

6

whether the injuries are consistent with sexual abuse has been provided by nurses and doctors in a number of New Mexico cases. *See State v. Ruiz*, 2007-NMCA-014, ¶ 9, 141 N.M. 53, 150 P.3d 1003 (noting the testimony of a physician who conducted a sexual assault examination on the victim and concluded that injuries were consistent with sexual abuse); *State v. Massengill*, 2003-NMCA-024, ¶ 42, 133 N.M. 263, 62 P.3d 354 (same); *State v. Macias*, 110 N.M. 246, 251-52, 794 P.2d 389, 394-95 (Ct. App. 1990) (upholding the qualifications of a family nurse practitioner to testify as an expert in the field of child sexual abuse). Similarly, in this case, Daniels and Carson provided opinion testimony based on the history provided to them and their medical examinations of the child. In compliance with *Alberico* and other New Mexico cases, neither expert testified about the identity of the perpetrator or the credibility of the child. While the experts gave their opinions regarding the cause of the injuries to the child and whether the injuries were consistent with sexual abuse, neither expert testified that, in fact, the injuries were caused by sexual abuse. We reject Defendant's claim that the testimony of the experts was in violation of our case law pertaining to expert opinions. We hold that the district court did not abuse its discretion in admitting the testimony from the experts.

Defendant further claims that the experts should not have been permitted to testify about hearsay statements made by the child and Mother. Rule 11-803(D)

NMRA provides for admission of "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."[1] Statements are considered reliable if they fall within a firmly rooted hearsay exception or if there is a showing of particularized guarantees of trustworthiness.[2] *Massengill*, 2003-NMCA-024, ¶ 13. The statements made by the child to the experts were reliable as they fell within Rule 11-803(D). Furthermore, the district court was aware that admission of statements made to medical examiners is a complicated area, and therefore, the court specifically cautioned the jury that the history provided to the

---

[1] Defendant mentions that he made an objection "that Ms. Daniels was not a medical treatment provider and, as such, the State was unable to avail itself of the applicable hearsay exception to permit the recitation of statements made by [the child] during the course of the SANE evaluation." The actual objection was, "Ms. Daniels is not in capacity to provide medical treatment" to which the State responded, "she's already been qualified as an expert." The objection made by Defendant did not specifically alert the district court to the claim he now makes on appeal. *See State v. Varela*, 1999-NMSC-045, ¶ 25, 128 N.M. 454, 993 P.2d 1280 ("[I]t is essential that the ground or grounds of the objection or motion be made with sufficient specificity to alert the mind of the trial court to the claimed error or errors, and that a ruling thereon then be invoked." (internal quotation marks and citation omitted)). In addition, our Supreme Court has stated that medically pertinent statements made to a SANE nurse are not to be categorically excluded. *State v. Mendez*, 2010-NMSC-044, ¶ 41, 148 N.M. 761, 242 P.3d 328.

[2] Although not argued by Defendant, we note that inquiry into the child's motive for making the statements to the medical experts is usually not necessary so long as the statements were relied on by the experts. *See Massengill*, 2003-NMCA-024, ¶ 25.

medical experts was not evidence in and of itself, but was for purposes of treatment only. The district court did not abuse its discretion in allowing the experts to testify about statements made by the child and Mother.

**DNA EVIDENCE—CHAIN OF CUSTODY**

Evidence was taken from Defendant for comparison to evidence obtained from the child and the child's clothing. Defendant claims that the State failed to show a proper chain of custody for the samples taken from Defendant. Specifically, Defendant claims that neither Daniels nor Officer Brad McFadin was present when the sample was taken from Defendant, and the State did not present testimony from the person who actually drew the samples from Defendant. Although Defendant also suggests that the chain of custody argument could involve "testimonial" evidence, Defendant did not make this argument to the district court, and we therefore do not address it. *See Varela*, 1999-NMSC-045, ¶ 25 ("[I]t is essential that the ground or grounds of the objection or motion be made with sufficient specificity to alert the mind of the trial court to the claimed error or errors, and that a ruling thereon then be invoked." (internal quotation marks and citation omitted)).

The State is not required to prove the chain of custody in such detail that all possibility of tampering is excluded, and if there are questions regarding a possible gap in the chain of custody, those questions go to the weight of the evidence and not

9

to its admissibility. *State v. Peters*, 1997-NMCA-084, ¶ 26, 123 N.M. 667, 944 P.2d 896. The State presented testimony from Daniels regarding the protocol for collecting DNA samples. Daniels testified that the records showed that Cathy Cooper, a nurse who was aware of the proper protocol, collected the sample from Defendant, sealed it in an envelope, and the envelope was sent to the police department. Officer McFadin testified, based on documents and receipts, that the DNA evidence from Defendant was received at the police department, booked into evidence, and sent to the laboratory by the evidence custodian. Cansino, the laboratory expert, testified that he picked up the sealed envelope containing Defendant's sample, that the kit contained Defendant's name, and that he personally tested the sample.

As indicated above, the chain of custody was established, in part, by evidence from business records, and in part, by testimony from witnesses. *Cf. Cent. Sec. & Alarm Co. v. Mehler*, 1996-NMCA-060, ¶ 30, 121 N.M. 840, 918 P.2d 1340 (noting that questions about the accuracy of business record stemming from a gap in the chain of custody or incorrect entries affects weight, not admissibility). The district court did not abuse its discretion in determining that the State sufficiently established the chain of custody for the DNA sample taken from Defendant.

**OATH ADMINISTERED TO THE CHILD**

Defendant claims that the district court erred when it used an "alternative" to

the standard witness oath before the child testified. When the child was called to testify, the district judge asked the child if she knew the difference between telling the truth and telling a lie, if she would get in trouble if she told a lie, and if she understood that it was important for her to tell the truth on that day. The child responded, "yes" to the questions. The district judge then said, "okay, good girl, go have a seat right over there in that witness chair." After the State had completed its direct examination of the child, Defendant made an objection, arguing that it was error for the district judge to have the child stand close to him while questioning the child, using leading questions, in front of the jury. Defendant also argued that it was error for the district judge to congratulate or reward the child by saying "good girl." The district judge explained that the physical configuration of the court did not allow him to see the child unless she was next to him and that he used the words "good girl" when she promised to tell the truth in front of the jury. The district judge stated that he can use his discretion when administering an oath to a child of tender years and that he believed there had been no undue prejudice as a result of his actions.

Initially, we note that Defendant did not make a timely objection at the time that the district judge questioned the child. Defendant waited until after the district judge had spoken with the child and after the State's examination was complete before voicing the objection. Therefore, the issue was not properly preserved for appeal, and

11

we will not address it. *Varela*, 1999-NMSC-045, ¶ 25 (stating that, in order to preserve an issue for appeal, the defendant must make a timely objection that specifically apprises the district court of the nature of the claimed error and invokes an intelligent ruling thereon).

Moreover, while the district judge did not administer an oath to the child using the language of Rule 5-613(A) NMRA, the questions asked of the child impressed upon her the importance of telling the truth, and her responses to the questions indicated that she would tell the truth. *Cf. State v. Arellano*, 1998-NMSC-026, ¶ 13, 125 N.M. 709, 965 P.2d 293 (holding that when an oath impresses on jurors the duties with which they must comply and ensures that they understand the spirit of the oath, the oath is sufficient even if not presented in the words as written in the uniform jury instruction); *State v. Ybarra*, 24 N.M. 413, 420, 174 P. 212, 214 (1918) (noting that courts should rely on substance and not words, and explaining that a child, who states that he or she knows it is right to tell the truth and wrong to tell a lie and knows that he or she will be punished if a lie is told, understands the nature of an oath and is competent to testify).

In addition, the district judge's statement to the child that she was a "good girl," in response to the child's agreement to tell the truth, was not a comment on the merits of the case or on the credibility of the child. *See State v. Gomez*, 2001-NMCA-080,

¶¶ 19-20, 131 N.M. 118, 33 P.3d 669 (holding that a trial court committed reversible error by telling a child witness "that you came here and you told us the truth" in front of the jury). Although Defendant claims that the district judge's actions were prejudicial in that they gave weight, credibility, and sympathy to the child, Defendant has provided no support for his claim. *See In re Ernesto M., Jr.*, 1996-NMCA-039, ¶ 10, 121 N.M. 562, 915 P.2d 318 ("An assertion of prejudice is not a showing of prejudice."). We affirm on this issue.

**CUMULATIVE ERROR**

Defendant contends that the errors, "in aggregate," that occurred at trial resulted in cumulative error and require reversal. As discussed in this opinion, we reject Defendant's arguments and conclude that there is no error. Therefore, the doctrine of cumulative error does not apply. *See State v. Salas*, 2010-NMSC-028, ¶ 40, 148 N.M. 313, 236 P.3d 32.

**CONCLUSION**

We affirm Defendant's convictions.

**IT IS SO ORDERED.**

_____

**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____

**CELIA FOY CASTILLO, Chief Judge**

_____

**LINDA M. VANZI, Judge**