This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                   **No. 30,318**

**JOSE MARTINEZ,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Kenneth Martinez, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Francine A. Chavez, Assistant Attorney General
Albuquerque, NM

for Appellee

Liane E. Kerr
Albuquerque, NM

for Appellant

## MEMORANDUM OPINION

**SUTIN, Judge.**

A jury convicted Defendant Jose Martinez of two counts of kidnapping in violation of NMSA 1978, Section 30-4-1 (2003), two counts of armed robbery with a firearm enhancement in violation of NMSA 1978, Section 30-16-2 (1973) and NMSA 1978, Section 31-18-16(C) (1993), and one count of conspiracy to commit armed robbery in violation of NMSA 1978, Section 30-28-2 (1979) and Section 30-16-2. Defendant appeals raising issues of double jeopardy, insufficient evidence, ineffective assistance of counsel, and improper admission of prejudicial evidence. Because we conclude that Defendant's convictions for kidnapping and armed robbery violated his right to be free from double jeopardy, we remand to the district court with instructions to vacate the kidnapping convictions. On all other counts, we affirm.

**BACKGROUND**

As background, we provide the following summary of the facts. We provide more detailed facts pertinent to our analysis within the body of the Opinion. In April 2006, Monica Zamora and Valerie Ramos (Victims) reported to law enforcement that their sister, Regina Salazar (a known drug user), and their niece (the child) were missing. Following the report, they commenced their own search to find Regina and the child. They drove to a neighborhood where Regina was known to have been "back and forth" in "several houses." As they drove around, they saw a woman, Claudia, walking down the street, and because Regina had previously "stayed with"

Claudia, they requested her help with the search. They gave Claudia a ride to a house where she said she could "talk to a few people [to] see if they ha[d] seen [Regina,]" but no one had. Moncia and Valerie parted with Claudia and continued their search.

Later, as they drove by another house looking for Regina they again saw Claudia, but this time she was standing in the driveway of a house. Claudia waved them down and told them that she knew where Regina was. Claudia had Monica and Valerie wait while she made a phone call, then she got into the car and directed them to an apartment complex, where Defendant was outside. Claudia told Monica and Valerie that Defendant knew where Regina and the child were and that he would take them there. Defendant and Claudia got into the backseat, Valerie drove, and Monica sat in the passenger's seat.

Valerie drove according to Defendant's directions. Shortly thereafter, Defendant began demanding money, and when Valerie told him that they (Monica and Valerie) did not have any money, Defendant pulled a gun out of his pants. This incident, which gave rise to the charges and subsequent convictions, will be discussed in greater detail later in this Opinion.

After considering each of Defendant's arguments, we conclude that his double jeopardy rights were violated by the kidnapping and armed robbery convictions, and we remand with instructions to vacate the lesser offense of kidnapping. We further

conclude that the State presented sufficient evidence to support each of Defendant's convictions, that any error in the admission of evidence at trial did not constitute fundamental error, and that Defendant failed to make a prima facie showing of ineffective assistance of counsel. Consequently, we reverse Defendant's kidnapping convictions and affirm his convictions of armed robbery and conspiracy to commit armed robbery.

**DISCUSSION**

**Double Jeopardy**

Defendant argues that his sentence was unconstitutional because it violated his right to be free from double jeopardy. He maintains that the armed robbery convictions and the kidnapping convictions were based on unitary conduct and that the kidnapping was subsumed within the armed robbery. Accordingly, Defendant requests that we "remand with instructions to vacate the lesser offense." We review, de novo, Defendant's claim that his right to be free from double jeopardy was violated. *State v. Quick*, 2009-NMSC-015, ¶ 6, 146 N.M. 80, 206 P.3d 985.

This is a double-description, multiple-punishment case. *See Swafford v. State*, 112 N.M. 3, 8, 810 P.2d 1223, 1228 (1991) (stating that double-description cases are those in which "the defendant is charged with violations of multiple statutes that may or may not be deemed the same offense for double jeopardy purposes"). In this

context, the proper analysis to determine whether a double jeopardy violation has occurred is a two-pronged test known as the *Swafford* test. *State v. Armendariz*, 2006-NMSC-036, ¶ 20, 140 N.M. 182, 141 P.3d 526. The *Swafford* test first requires a determination of whether the conduct underlying the offenses was unitary; in other words, whether "the same conduct violates both statutes." *Swafford*, 112 N.M. at 13, 810 P.2d at 1233. The second aspect of the test "focuses on the statutes at issue to determine whether the [L]egislature intended to create separately punishable offenses." *Id.* Double jeopardy prohibits multiple punishments in the same trial only when the conduct was unitary and the Legislature did not intend to create separately punishable offenses. *Id.*

"In determining whether [a d]efendant's conduct was unitary, we consider whether [the d]efendant's acts were separated by sufficient indicia of distinctness." *State v. Lopez*, 2008-NMCA-002, ¶ 16, 143 N.M. 274, 175 P.3d 942 (internal quotation marks and citation omitted). "Distinctness may . . . be established by the existence of an intervening event, the defendant's intent as evinced by his or her conduct and utterances, the number of victims, and the behavior of the defendant between acts." *Id.* (internal quotation marks and citation omitted). Defendant contends that the kidnapping and the armed robbery charges arose from the single incident of Defendant having held Victims against their will in order to complete the

armed robbery. The State conceded as much at trial. And we agree. We therefore move to the second aspect of the *Swafford* test.

Where, as here, the Legislature has not expressly provided for multiple punishments, we must determine whether one statute is subsumed within another. *Swafford*, 112 N.M. at 14, 810 P.2d at 1234. If we conclude that one statute is subsumed within the other, we must likewise conclude that, for double jeopardy purposes, the statutes are the same, and multiple punishments cannot stand. *Id.* Alternatively, if the elements of the statute are not subsumed within one another, this leads only to "a presumption that the statutes punish distinct offenses[,]" and we must further examine whether "other indicia of legislative intent" are present. *Id.*

In determining whether one statute is subsumed within another, we look to the statutory text to determine whether "each statute requires an element of proof not required by the other[.]" *Armendariz*, 2006-NMSC-036, ¶ 22. If each requires proof of a fact that the other does not, we presume that they describe distinct offenses, "notwithstanding a substantial overlap in the proof offered to establish the crimes[.]" *Id.* ¶ 21 (internal quotation marks and citation omitted). We turn now to the jury instructions, which became the law of the case. *See* § 30-4-1; § 30-16-2; *see also State v. Armijo*, 2005-NMCA-010, ¶ 22, 136 N.M. 723, 104 P.3d 1114 ("[W]e look only to the elements of the statutes as charged to the jury and disregard the

inapplicable statutory elements."); *State v. Armijo*, 1999-NMCA-087, ¶ 8, 127 N.M. 594, 985 P.2d 764 ("[J]ury instructions become the law of the case[.]" (internal quotation marks and citation omitted)).

On the kidnapping charges, the jury was instructed, in pertinent part, that to find Defendant guilty of kidnapping the State was required to prove that: "1. . . . [D]efendant restrained or confined [each Victim respectively] by force or intimidation; [and] 2. . . . [D]efendant intended to hold [each Victim respectively] against [her] will for the purpose of making [her] do something or for the purpose of keeping [her] from doing something[.]" On the other hand, for the jury to find Defendant guilty of armed robbery, the State was required to prove that: "1. . . . [D]efendant took and carried away [money or personal property] from [each Victim respectively], or from her immediate control intending to permanently deprive [her] of the property; 2. . . . [D]efendant was armed with a handgun; [and] 3. . . . [D]efendant took the [money or personal property] by threatened force or violence[.]"

The State argues that the two crimes are distinct because each requires elements that the other does not. Specifically, the State contends that "armed robbery does not require . . . taking, restraining, transporting[,] or confining . . . a person[; and] . . . the crime of kidnapping does not require the taking of anything of value with a weapon by use or threatened use of force." At trial, however, the State's theory of the case

was that Defendant's having aimed the gun at Victims constituted the force or intimidation required for the kidnapping charge and that Defendant's use of the gun likewise constituted the threatened use of force or violence required under the robbery statute. Further, the State posited that the underlying purpose of Defendant's having held Victims against their will (for the kidnapping charge) was taking their money and property. And the State also indicated that Defendant's having taken Victims' money and property likewise met the robbery element of taking something of value from Victims. We think the State correctly analyzed these elements. Therefore, contrary to the State's appellate position, under its theory of the case at trial, and as we also see it, under the facts of this case, the crime of kidnapping was subsumed within the crime of armed robbery, thereby rendering the crimes indistinct for purposes of double jeopardy. In other words, this was not a case in which "each statute require[d] an element of proof not required by the other[.]" *Armendariz*, 2006-NMSC-036, ¶ 22.

Having concluded that the conduct underlying both the kidnapping and the armed robbery was unitary, and having likewise concluded that, under the facts here, the kidnapping was subsumed within the robbery, we further conclude that Defendant's right to be free from double jeopardy was violated when he was sentenced separately for both crimes. On remand, Defendant's kidnapping convictions will be vacated. *See Kersey v. Hatch*, 2010-NMSC-020, ¶ 12, 148 N.M.

381, 237 P.3d 683 ("If double jeopardy is violated, we must vacate the conviction for the lesser offense." (internal quotation marks and citation omitted)). *Compare* § 30-16-2 (stating that armed robbery with a deadly weapon, for second and subsequent offenses, is a first degree felony), *with* § 30-4-1(B) (stating that kidnapping is a second degree felony when the defendant voluntarily frees the victim in a safe place and the defendant has not inflicted a physical injury or a sexual offense upon the victim).

**Sufficiency of the Evidence**

Defendant claims that there was insufficient evidence to convict him of kidnapping, armed robbery, and conspiracy. Whether there was sufficient evidence to support a conviction is a question of law that we review de novo. *State v. Neatherlin*, 2007-NMCA-035, ¶ 8, 141 N.M. 328, 154 P.3d 703. "In reviewing the sufficiency of evidence used to support a conviction, we resolve all disputed facts in favor of the [prosecution], indulge all reasonable inferences in support of the verdict, and disregard all evidence and inferences to the contrary." *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. We "make a legal determination of whether the evidence viewed in this manner could justify a finding by any rational trier of fact that each element of the crime charged has been established beyond a reasonable doubt." *State v. Apodaca*, 118 N.M. 762, 766, 887 P.2d 756, 760 (1994)

(internal quotation marks and citation omitted). "[W]e do not reweigh the evidence or substitute our judgment for that of the jury." *Neatherlin*, 2007-NMCA-035, ¶ 8.

**A.      Conspiracy**

To support a conviction for conspiracy to commit armed robbery, the State was required to prove that Defendant and Claudia "by words or acts agreed together to commit [a]rmed [r]obbery; [and that] . . . [D]efendant and the other person intended to commit [a]rmed [r]obbery[.]" *See* § 30-28-2(A); § 30-16-2. Defendant argues that the evidence did not support a finding that there was "an agreement of any kind" between him and Claudia. He maintains that the State failed to present evidence of Claudia's participation in the armed robbery or to present evidence that she intended or agreed to rob Victims.

"A conspiracy may be established by circumstantial evidence. Generally, the agreement is a matter of inference from the facts and circumstances." *State v. Ross*, 86 N.M. 212, 214, 521 P.2d 1161, 1163 (Ct. App. 1974). At trial, the State presented evidence that Claudia waved Victims down and told them that she knew where their sister was. Claudia told Victims to "hold on[,]" while she made a phone call. After the call, she got into Victims' car and directed them to an apartment complex where Defendant was standing outside. Claudia got out of the car and spoke to, then "made out" with Defendant, then she told Victims that Defendant knew where Victims' sister

10

and the child were, and that Defendant had to go with them. Having driven according to Defendant's direction for a time, "all of a sudden, [Claudia and Defendant began] talking in Spanish[.]" And subsequently, "all of a sudden, [Defendant] started . . . telling [Valerie] that he wanted money." "Before [Valerie [knew] it, [Defendant] pulled a gun out of his pants and . . . [e]verything went crazy inside the car." After Defendant had demanded money from Victims at gunpoint, and after Valerie told him she did not have any money, Claudia repeatedly "scream[ed]" to Defendant, "'I'm sorry. I'm sorry.'" Following the robbery, Defendant and Claudia together "jumped out of the car[.]"

On these facts, and indulging in all reasonable inferences in support of the verdict, we conclude that there was sufficient circumstantial evidence to support the jury's conspiracy finding. The jury could reasonably have inferred that Defendant and Claudia agreed together to commit the armed robbery and that the agreement was formed when Claudia made the phone call as Victims waited in the car, or when Claudia and Defendant met in front of the apartment complex, or in the car when Claudia and Defendant were speaking to each other in Spanish. Similarly, the jury could reasonably have inferred that Claudia and Defendant intended to commit the armed robbery from Claudia's having told Defendant, during the armed robbery, that she was sorry, or from the fact that Claudia and Defendant left the car together, or

from both of these facts together, both of which reasonably support a conclusion that Claudia and Defendant were acting in concert. In sum, the circumstantial evidence presented at trial supported the jury's inference of conspiracy. We see no basis for reversal on this ground.

**B.  Armed Robbery**

To find Defendant guilty of armed robbery, the jury was instructed that they had to find that Defendant took and carried away money and personal property from Victims by threatened force or violence and that in doing so he used a gun. *See* § 30-16-2; § 31-18-16(C). Defendant argues that "[b]ecause no gun was found, a reasonable jury could find there wasn't an armed robbery[.]" Additionally, Defendant appears to argue that there was no evidence that Victims' property was taken by "threatened use of force."

Victims both testified that Defendant had a gun. And Victims both testified that they complied with Defendant's demands of money and personal property because he had the gun "pulled out" or "point[ed]" at them. The evidence at trial was sufficient to support the jury's finding that Defendant took and carried away Victims' property by threatened use of a gun. That a hypothetical "reasonable jury could find there wasn't an armed robbery" because Defendant's gun was not found is not persuasive to this Court. *See State v. Garcia*, 2011-NMSC-003, ¶ 5, 149 N.M. 185, 246 P.3d

12

1057 (stating that the appellate courts will not "second-guess the jury's decision concerning the credibility of witnesses, reweigh the evidence, or substitute its judgment for that of the jury" (alterations, internal quotation marks, and citation omitted)); *see also Couch v. Astec Indus., Inc.*, 2002-NMCA-084, ¶ 39, 132 N.M. 631, 53 P.3d 398 ("[T]he question is not whether substantial evidence exist[ed] to support the opposite result, but rather whether [substantial] evidence support[ed] the result reached." (internal quotation marks and citation omitted)).

**C.     Kidnapping**

Defendant contends that his kidnapping convictions were not supported by sufficient evidence.  Because we remand to the district court with instructions to vacate Defendant's kidnapping convictions, we will not address this issue.

**Evidentiary Issue**

Defendant argues that, pursuant to the Rules of Evidence,  the testimony from "several witnesses" who stated that following the incident, as Victims were being interviewed by the police, gun shots were heard, should have been excluded. Defendant makes this claim pursuant to *State v. Franklin*, 78 N.M. 127, 428 P.2d 982 (1967), and *State v. Boyer*, 103 N.M. 655, 712 P.2d 1 (Ct. App. 1985).  Because the argument was not preserved, Defendant requests that we review for fundamental error. Fundamental error applies "to prevent a miscarriage of justice, . . . if the question of

guilt is so doubtful that it would shock the conscience to permit the conviction to stand." *State v. Gomez*, 2001-NMCA-080, ¶ 21, 131 N.M. 118, 33 P.3d 669 (omission in original) (alteration, internal quotation marks, and citation omitted).

Defendant maintains that the evidence of "shots fired" was not relevant to the charges of armed robbery and/or kidnapping and should have been excluded pursuant to Rule 11-401 NMRA. *See id.* (stating that only relevant evidence is admissible). He also contends, pursuant to Rule 11-403 NMRA, that the evidence was more prejudicial than probative and that it should have been excluded on that basis. He concludes that he was deprived of a fair trial by virtue of admission of the "unrelated, prejudicial evidence" which, in his view, "tipped the balance toward conviction" by "present[ing] the jury with the certainty that [he] possessed a weapon[.]"

Any error in the admission of the "shots fired" testimony did not rise to the level of fundamental error. *See State v. Cunningham*, 2000-NMSC-009, ¶ 13, 128 N.M. 711, 998 P.2d 176 ("The doctrine of fundamental error is to be resorted to in criminal cases only for the protection of those whose innocence appears indisputably, or open to such question that it would shock the conscience to permit the conviction to stand." (internal quotation marks and citation omitted)). Considering the strength of the legitimate evidence arrayed against Defendant regarding his having used a gun in the commission of the robbery and kidnapping, this is not a case in which

14

Defendant's innocence appears indisputable or otherwise so questionable that it would shock the conscience of this Court to permit the conviction to stand.

**Defendant's Ineffective Assistance of Counsel Claim**

Defendant claims that his counsel was ineffective. He identifies a number of alleged mistakes by his trial counsel and requests reversal on this basis. "We review claims of ineffective assistance of counsel de novo." *State v. Quinones*, 2011-NMCA-018, ¶ 28, 149 N.M. 294, 248 P.3d 336. "The test for ineffective assistance of counsel is whether defense counsel exercised the skill of a reasonably competent attorney." *State v. Aker*, 2005-NMCA-063, ¶ 34, 137 N.M. 561, 113 P.3d 384.

> To establish a prima facie case of ineffective assistance of counsel, [the d]efendant must show that (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness; and (2) that [the d]efendant suffered prejudice in that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

*Id.* (internal quotation marks and citation omitted).

Although Defendant points to various alleged errors by his counsel, he fails to make any argument that would establish a prima facie case of ineffective assistance of counsel under either aspect of the test stated in *Aker*, 2005-NMCA-063, ¶ 34. Specifically, Defendant claims that his counsel erred in failing to object to or cross-examine witnesses regarding the "shots fired" testimony. He fails, however, to show

how "the result of the proceeding would have been different" had his counsel acted differently. *Id.* (internal quotation marks and citation omitted).

Defendant further contends that although he wanted to testify, at the direction of his counsel, he did not testify. There is no indication in the record, however, that Defendant wanted to testify or that he asked his counsel to put him on the witness stand. Nor was there any indication that counsel failed to discuss with him the positive and negative aspects of taking the witness stand. Further, there was no indication that Defendant's counsel told him that he could not testify or that he otherwise improperly refused to allow him to testify. Defendant's counsel may well have made a tactical decision to advise Defendant not to testify, and "[o]n appeal, [the appellate court] will not second guess the trial strategy and tactics of the defense counsel." *Lytle v. Jordan*, 2001-NMSC-016, ¶ 43, 130 N.M. 198, 22 P.3d 666 (internal quotation marks and citation omitted). Moreover, Defendant has not argued that his counsel's advice in this regard fell below an objective standard of reasonableness or that, but for the alleged error, the result of the proceeding would have been different. *Aker*, 2005-NMCA-063, ¶ 34.

Finally, Defendant argues that his counsel "failed to file a [n]otice of [a]ppeal or [d]ocketing [s]tatement" and that his counsel "only filed a [d]ocketing [s]tatement at the directive of the [district] court." Notwithstanding any error on behalf of his

counsel in this regard, Defendant fails to indicate how, "but for [his] counsel's unprofessional error[], the result of the proceeding would have been different." *Id.* (internal quotation marks and citation omitted). As Defendant's appeal was timely filed and is, in this Opinion, being addressed by this Court, we fail to see how Defendant was prejudiced by ineffective assistance of counsel by his attorney's failure, without direction from the district court, to file a docketing statement. As Defendant has failed to make a prima facie showing that any of his counsel's alleged errors constituted ineffective assistance of counsel, his argument in this regard does not provide a basis for reversal.

**CONCLUSION**

On remand to the district court, Defendant's kidnapping convictions shall be vacated. On all other counts, we affirm.

**IT IS SO ORDERED.**


_____
**JONATHAN B. SUTIN, Judge**

**WE CONCUR:**


_____
**CYNTHIA A. FRY, Judge**


_____
**RODERICK T. KENNEDY, Judge**

17