This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-38395**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**DAVID HYAMS,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**T. Glenn Ellington, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Charles J. Gutierrez, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
William O'Connell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**MEDINA, Judge.**

**{1}** Defendant David Hyams appeals his convictions for two counts of criminal sexual penetration of a minor (CSPM) (child under 13), in violation of NMSA 1978, Section 30-9-11(D)(1) (2009), and one count of criminal sexual contact of a minor (CSCM) (child under 13) in violation of NMSA 1978, Section 30-9-13(B)(1) (2003). On appeal, Defendant argues that (1) the district court committed plain error by allowing the State to improperly introduce hearsay evidence of Victim's statements at trial; (2) the district court violated Defendant's right to confront his accuser by not allowing him to cross-

examine Victim about a prior inconsistent statement; (3) the district court erred by not awarding Defendant credit for his pretrial confinement; (4) a statement made by the prosecutor during closing argument constituted prosecutorial misconduct; and (5) cumulative error requires reversal. Unpersuaded by Defendant's arguments, we affirm.

## BACKGROUND

### I.      Proceedings Prior to Trial

**{2}**     Defendant was indicted on two counts of CSPM and one count of CSCM in 2014 as a result of disclosures made by the daughter of his girlfriend (Victim). Victim disclosed that Defendant licked her vagina in July 2014 and in September 2014 touched her breasts and attempted to digitally penetrate her vagina. Defendant was first arrested on September 10, 2014, and arraigned on October 6, 2014. In the interim, Defendant was released and rearrested. Defendant was released from pretrial confinement in November 2016. A second indictment for Defendant was filed in January 2017, and the initial indictment was dismissed without prejudice in August 2017. Defendant proceeded to trial on the second indictment in February 2019.

**{3}**     Prior to trial, both parties moved in limine to exclude evidence of uncharged acts. The State specifically moved in limine to exclude any evidence that Victim recanted or changed her narrative, including a video made by Victim's mother. Defendant objected, prompting the district court to inquire about the video in question. The State responded that the video contained several hearsay statements made by Victim's mother and that the video would need to be redacted, since the State did not plan to call Victim's mother as a witness. The State noted that Victim's mother could be heard prompting Victim and asserted that Defendant would have to lay a proper foundation that Victim made a prior inconsistent statement. The State also argued that much of the video was irrelevant and involved Victim vouching for Defendant's character, and those portions of the video would need to be redacted as well. Defendant responded that he would like to be able to cross-examine Victim if he could lay the proper foundation and redact the video. The district court reserved ruling on this issue and stated that it would revisit the issue before Victim testified.

### II.     Trial

**{4}**     The State called five witnesses at trial: Officer Anthony Curry of the Santa Fe Police Department (SFPD), Detective Jeramie Bisagna of SFPD, Teresa Candelaria, a forensic interviewer, Victim, and Jacqueline Belinsky (Nurse Belinsky), a sexual assault nurse examination (SANE) Nurse Practitioner. The evidence developed at trial is as follows.

### A.      Testimony of Officer Curry

**{5}**     Officer Curry was dispatched to Victim's elementary school on September 8, 2014, in reference to a report of a sexual crime against a child. When Officer Curry

arrived at Victim's school, he spoke with a school official to get a sense of why he had been dispatched, then called for someone to interview Victim. Officer Curry met Victim but did not interview her personally, explaining that he was not qualified to interview children and that it was important to have a qualified interviewer conduct the interview in order to ensure the child is comfortable.

{6}     During cross-examination, Defense counsel observed that Officer Curry had originally noted that Victim had made allegations against a "David Hines" and questioned whether Officer Curry had ever investigated a David Hines. Defense counsel asked, "There would have had to have been a full investigation before you arrest somebody, correct?" insinuating the investigation against Defendant was incomplete.

## B.     Testimony of Detective Bisagna

{7}     Detective Bisagna testified that he received a report of child sexual assault from Officer Curry in September 2014. A forensic interview of Victim was scheduled for the day after he received the report. Detective Bisagna explained that he provides forensic interviewers with a brief overview of the investigation so as not to lead the interviewer or child. Although Detective Bisagna does not provide forensic interviewers with direct questions, he will sometimes ask a forensic interviewer to clarify a child's statement after the interview is largely complete.

{8}     Following Victim's forensic interview, Detective Bisagna obtained a warrant for Defendant's arrest and executed it the following day. Detective Bisagna transported Defendant to the police station and interviewed Defendant. During this interview, Defendant denied Victim's allegations and referenced a contentious relationship with Victim's father.

{9}     Detective Bisagna also explained that DNA evidence was not collected because the time between Victim's last reported incident of abuse and her SANE examination was outside of the preferred seventy-two-hour window for collecting DNA. He was also of the opinion that DNA would have had no probative value because Victim and Defendant lived together.

{10}    During cross-examination, defense counsel asked Detective Bisagna about Victim's father's involvement in the forensic interview and SANE examination, and how many times Detective Bisagna spoke to Victim's father over the course of the investigation. He also questioned why Detective Bisagna had investigated "David Hines" and whether he investigated anyone besides Defendant.

## C.     Testimony of Forensic Interviewer Candelaria

{11}    Candelaria, who was retired at the time of trial, explained her training and background, noting that she had performed over 1500 forensic interviews. Candelaria explained that she was trained to ask questions of children in a specialized manner, asking them open-ended questions as opposed to direct questions so that the child has

the opportunity to express their story. She then explained that she only received basic information from law enforcement before her interviews and that in this case, she received no questions from law enforcement during Victim's interview. When Candelaria conducted interviews, only she and the child are present in the room, and she noted that neither of Victim's parents were present for her interview.

**{12}** Candelaria's interview with Victim was under an hour. Candelaria assisted Victim in making drawings of the acts she described because Victim's arm was in a cast at the time of the interview.

**{13}** The district court admitted the drawings into evidence without objection. The first drawing was of a bedroom and depicted Victim lying on a couch, representing the act of abuse that occurred in July 2014. The second drawing depicted Victim sitting on the couch doing her homework and was meant to represent the act of abuse that occurred in September 2014. The third drawing depicted an outline of a person and had colored markings on it, made by Victim, which represented the areas of the body where Victim stated that Defendant touched her breasts and her vaginal area.

**D.    Testimony of Victim**

**{14}** Victim was the State's next witness. Victim identified Defendant as her mother's former boyfriend and testified that they used to live together. Victim testified that her parents were separated and that she split her time between her mother's and father's homes. Victim recalled an incident in July 2014 when she was ten years old. She was napping on the couch in her bedroom at her mother's house when Defendant woke her up. Defendant removed her underwear and attempted to penetrate her vaginally with his tongue. Defendant instructed Victim not to tell anyone about the incident, and she did not disclose the incident to anyone at that time, including her father.

**{15}** Victim recalled another incident that took place in September 2014 while Defendant was helping her with her homework. Victim's arm was in a cast at the time because she had broken her arm in August. As Victim was working on her homework, Defendant put his hand under her nightgown and attempted to digitally penetrate her and also touched Victim's breasts.

**{16}** After this incident, while Victim was at her father's home, she and her father came across a social media post describing "rape." Victim had little understanding of sex at that point and asked her father what rape was. Victim's father explained rape and that it was a bad thing and wrong to do. Victim then told her father what Defendant had done to her. A couple of days later Victim also reported what happened to her at school. Victim continued to talk to her father about what had happened to her in the interim, but no one told her what to say. Victim also described a drawing she made with forensic interviewer Candelaria depicting an act of abuse.

**{17}** During cross-examination, Defense counsel asked Victim, "So, a little bit further down the road . . . it sounds like you and your mother had some interaction with the

detective in this matter where you had stated that these things may not have happened," at which point the State objected. The State asserted that "this is about the video again" and objected as to relevance due to the recantation in question relating to acts of uncharged conduct.[1] Defense counsel responded that he did not recall any mention of uncharged conduct in the video, to which the State replied that the only act the Victim recants in the video was an uncharged act. Defense counsel stated he recalled that there were multiple short videos and that in one of them, he recalled Victim stating that "none of this happened" without reference to a specific act. The State argued that all the short videos were taken at the same time and that viewed separately, the videos lacked context, and that it had a narrative of the videos available.[2]

{18}    After reviewing the narrative outside the presence of the jury, the district court asked the State for further clarification on what the narrative memorialized. The State explained that the narrative was part of a supplemental police report made after Victim's mother delivered the videos in question to Detective Bisagna. The State argued that the narrative was clear Victim only recanted uncharged conduct, and that Defense counsel could not ask if Victim ever recanted without either mischaracterizing her recantation or allowing uncharged conduct to come in. Defense counsel withdrew his original question stating that it was "gonna go down a road that we don't really want to."

{19}    Defense counsel then asked if he could question Victim about a voicemail that Victim's mother left for Detective Bisagna where Victim could be heard stating that she lied. The State objected and advanced the same argument as to uncharged conduct, stating that the police report noted that Victim specifically said she was lying about an uncharged act. The district court asked if there was a copy of the voicemail in discovery, and both parties responded that they did not have a copy.

{20}    The district court stated it was inclined to grant the objection and not allow questioning on the voicemail unless there were details in Victim's statement specific to the two acts before the jury. After confirming the parties had no additional argument, the district court sustained the objection. The district court reasoned that there was not enough detail in the narrative to know exactly what Victim was discussing and that there was no copy of the voicemail in evidence. The district court stated that the question created potential harm due to the uncharged conduct that was not before the jury, and that allowing the question would distract from the issues before the jury. After a brief recess, the trial resumed.

### E.    Testimony of Nurse Belinksy

{21}    The State's final witness was Nurse Belinsky. Nurse Belinksy had received an advanced nursing degree to become a pediatric nurse practitioner and was trained in the diagnosis and treatment of children. She received intensive training and took a

---

1Although the district court stated it would rule on this issue before Victim testified, our record does not reflect that the district court did so.
2The State initially referred to this narrative as a transcript, but it was later clarified to be a narrative taken from a supplemental police report.

certification exam to become a SANE nurse in addition to her advanced degree. Nurse Belinksy had approximately forty-one years of training as a SANE nurse and had conducted over 1000 exams during her career. Without objection, the district court admitted Nurse Belinksy as an expert in sexual assault nurse examinations.

**{22}**     Nurse Belinsky described the exam she conducted on Victim. Victim's mother was present for the exam. Nurse Belinsky spoke to Victim about what happened to her in order to determine where she should focus her exam. Nurse Belinksy found an injury to Victim's hymen, which she described as a scar. Nurse Belinsky's medical opinion was that this scar was caused by digital penetration and diagnosed Victim's injury as being consistent with child sexual abuse. Nurse Belinsky reiterated on cross-examination that it would be very unlikely for this injury to occur for reasons other than sexual assault. Nurse Belinsky did not collect DNA evidence because Victim reported to her that the last incident of abuse had occurred more than seventy-two hours prior.

**{23}**     The jury found Defendant guilty of two counts of CSPM and one count of CSCM as charged. The district court sentenced Defendant to eighteen years for each count of CSPM, with the sentences to run consecutively, and nine years for the count of CSCM, with that sentence to run concurrent to the sentences for the two counts of CSPM. Defendant's amended judgment and sentence did not award pretrial confinement credit. This appeal followed.

## DISCUSSION

**{24}**     We first address Defendant's claims regarding hearsay and limiting cross-examination. We then turn to Defendant's argument regarding pretrial confinement credit. Finally, we briefly address Defendant's arguments regarding prosecutorial misconduct and cumulative error.

## I.     Hearsay

**{25}**     Defendant argues that the State introduced multiple instances of hearsay over the course of the trial, including testimony by Detective Bisagna, forensic interviewer Candelaria, and Nurse Belinsky about Victim's statements. Defendant argues that these statements were introduced for their truth and had the effect of repeating and emphasizing Victim's allegations for the jury. The State responds that none of the challenged statements constitute hearsay. The State contends that (1) Nurse Belinsky's testimony about what Victim described to her is admissible as statements made for medical diagnosis or treatment pursuant to Rule 11-803(4) NMRA; and (2) Detective Bisagna and Candelaria's testimony about Victim's statements was offered to rebut Defendant's theory of the case. Alternatively, the State contends that even if the statements were hearsay, the admission of the statements did not rise to the level of plain error.

**{26}**     Defendant did not object at trial to any of the statements he challenges on appeal. "Absent preservation, we only review for plain error." *State v. Gwynne*, 2018-

NMCA-033, ¶ 26, 417 P.3d 1157. The plain error rule is "intended to be used sparingly as an exception to the rule requiring objections, which promotes efficient and fair proceedings." *State v. Miera*, 2018-NMCA-020, ¶ 13, 413 P.3d 491. "To find plain error, the Court must be convinced that admission of the testimony constituted an injustice that created grave doubts concerning the validity of the verdict." *State v. Montoya*, 2015-NMSC-010, ¶ 46, 345 P.3d 1056 (internal quotation marks and citation omitted). "Further, in determining whether there has been plain error, we must examine the alleged errors in the context of the testimony as a whole." *Id.* (alteration, omission, internal quotation marks, and citation omitted).

**{27}** We decline to find that plain error occurred because none of the alleged hearsay statements constitute hearsay. We explain.

## A. Statements Made for the Purpose of Medical Treatment

**{28}** A hearsay statement is one that "the declarant does not make while testifying at the current trial or hearing" that is offered for "the truth of the matter asserted." Rule 11-801(C) NMRA. However, statements that would be considered hearsay are not excluded under certain circumstances, including statements that are "made for—and [are] reasonably pertinent to—medical diagnosis or treatment." Rule 11-803(4).

**{29}** Our Supreme Court examined the admissibility of statements made to a SANE nurse at length in *State v. Mendez*, 2010-NMSC-044, 148 N.M. 761, 242 P.3d 328. In *Mendez*, our Supreme Court rejected "the notion that statements [made for the purpose of medical diagnosis or treatment] can be categorically excluded based on the professional status or affiliation of the individual to whom the statement is made." *Id.* ¶ 41. *Mendez* explained that the hearsay exception for statements made for the purpose of medical diagnosis or treatment is animated by two underlying rationales: (1) the help-seeking motivation and (2) pertinence. *Id.* ¶¶ 20-21. Under the help-seeking motivation rationale, "the declarant's self-interest in obtaining proper medical attention renders the usual risks of hearsay testimony minimal when associated with medical treatment." *Id.* ¶ 20 (omission, internal quotation marks, and citation omitted). Under the second rationale, "if a statement is pertinent to a medical condition, such that a medical care provider reasonably relies upon it in arriving at a diagnosis or treatment, the statement is deemed sufficiently reliable to overcome hearsay concerns." *Id.* ¶ 21. But our Supreme Court also recognized that SANE nurses have a dual role, "the provision of medical care and the collection and preservation of evidence." *Id.* ¶ 42. Thus, *Mendez* requires trial courts to closely scrutinize "the exchange between SANE nurse and patient to determine the statement's overall trustworthiness under Rule 11-803[(4)] in light of the two rationales highlighted above." *Id.*

**{30}** Before testifying about Victim's statements, Nurse Belinsky testified that she asks questions of children who come to her for examination to make sure the child feels safe and to determine where on the child's body she should direct her medical exam. Nurse Belinsky testified that she asked the same questions to Victim to guide her examination of Victim. Based on Victim's statements, Nurse Belinsky conducted her medical

examination and found an injury consistent with child sexual abuse. Nurse Belinksy also stated that she conducted Victim's exam by following the same protocol she uses for all her SANE exams.

**{31}** Nurse Belinksy's testimony about Victim's description of her abuse was admissible under the pertinence rationale, and therefore, her testimony about Victim's statements falls under Rule 11-803(4) as testimony for the purpose of medical treatment or diagnosis. *See Mendez*, 2010-NMSC-020, ¶ 48 ("[T]he patient's account of what happened to her body helps medical care providers determine the best way to proceed in diagnosing and ultimately treating any injury."). To the extent that Defendant challenges Nurse Belinksy's testimony that Victim identified him as the perpetrator, this disclosure was pertinent to Nurse Belinksy's examination because Victim and Defendant lived together, and Nurse Belinsky explained that part of her rationale in asking such questions of children is to determine whether they are safe. *See id.* ¶ 53 (stating that the identity of the abuser may be admissible where it is pertinent to the psychological treatment or where treatment involves separating the victim from the abuser); s*ee also State ex rel. Child., Youth & Fams. Dep't v. Frank G.*, 2005-NMCA-026, ¶ 30, 137 N.M. 137, 108 P.3d 543 ("[I]nformation that a child sexual abuser is a member of the patient's household is reasonably pertinent to a course of treatment that includes removing the child from the home."). As such, failing to exclude Belinksy's testimony about Victim's statements did not constitute plain error.

## B.    Statements Not Offered for the Truth of the Matter Asserted

**{32}** "Out-of-court statements that are not offered for the truth of the matter asserted do not fall within the definition of hearsay." *State v. Stampley*, 1999-NMSC-027, ¶ 39, 127 N.M. 426, 982 P.2d 477. For instance, "statements supporting the reasonableness of a detective[']s conduct may be admissible if relevant to a fact of consequence and not offered to prove the truth of the matter asserted." *Id.* "However, the evidence must be consistent with a legitimate purpose and have some proper probative effect on an issue in the case." *State v. Alberts*, 1969-NMCA-064, ¶ 16, 80 N.M. 472, 457 P.2d 991.

**{33}** Here, Defendant challenged the reasonableness of the police investigation and argued Victim's father may have influenced her disclosure. Defendant elicited testimony from Officer Curry insinuating that he was arrested prematurely. Defendant went on to elicit testimony from Detective Bisagna calling the thoroughness of the investigation into question as well as testimony about a potentially contentious relationship between Defendant and Victim's father. During cross-examination of Candelaria, Defendant asked if she ever receives input from law enforcement officers and she confirmed that she received no direct questions from Detective Bisagna.

**{34}** Once Defendant insinuated that the law enforcement investigation was conducted poorly and that Victim was influenced by her father, the State was entitled to rebut Defendant's theory of the case by presenting testimony about statements made by Victim to Detective Bisagna and Candelaria. Specifically, the testimony of Detective Bisagna and Candelaria was consistent with the legitimate purpose of explaining why

Defendant was arrested without need for further investigation and why DNA evidence was not collected.

**{35}** Moreover, Defendant has not demonstrated that he was prejudiced by the testimony he challenges as hearsay, because the statements were cumulative of other evidence. *See State v. Crain*, 1997-NMCA-101, ¶ 29, 124 N.M. 84, 946 P.2d 1095 (considering whether trial counsel was ineffective for failing to object on hearsay grounds to cumulative identity testimony). Victim testified about the incidents of abuse perpetrated by Defendant, and her testimony was consistent with what was discussed by Detective Bisagna, Candelaria, and Nurse Belinsky. Victim also testified that she spoke to Candelaria, she assisted Candelaria in making the drawings the State entered into evidence, and she had a SANE exam. The testimony of Detective Bisagna, Candelaria, and Nurse Belinksy was therefore cumulative of Victim's testimony.

**{36}** Based on the foregoing, we hold that Detective Bisagna, Candelaria, and Nurse Belinksy's testimony recalling Victim's statements were not hearsay and that their admission does not constitute plain error.

## II.       Limiting Cross-Examination

**{37}** Defendant next argues that the district court erred by not allowing him to cross-examine Victim about a prior inconsistent statement. Defendant argues that (1) he had a right to challenge the credibility of witnesses making allegations against him during cross-examination; and (2) by sustaining the State's objection, the district court deprived him of his ability to impeach his accuser, constituting an abuse of discretion. We decline to review this argument for lack of preservation, and we explain.

**{38}** We first observe that Defendant's argument regarding the prior inconsistent statement is unclear. Below, defense counsel indicated that Victim can be heard making a prior inconsistent statement on video and voicemail. Defendant's appellate briefing only refers to a "prior inconsistent statement" and it is unclear whether he challenges the district court's lack of ruling on the video's admissibility or the district court's sustained objection to his question about the voicemail. See *Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 (stating that an appellate court will not attempt to "guess at what a party's arguments might be" (alteration, internal quotation marks, and citation omitted)).

**{39}** Regardless, Defendant did not preserve this error for our review. If we assume Defendant challenges Victim's video-recorded statement, defense counsel withdrew his request to question Victim about the video because it was "gonna go down a road that we don't really want to." "To preserve error for review, a party must fairly invoke a ruling of the district court." *Crutchfield v. N.M. Dep't of Tax'n & Revenue*, 2005-NMCA-022, ¶ 14, 137 N.M. 26, 106 P.3d 1273. If we assume Defendant challenges the voicemail, Defendant did not argue a violation of his right to confrontation under either the United States Constitution or the New Mexico Constitution below. At trial, defense counsel stated he would like to ask Victim about the voicemail, but did not argue that his right of

confrontation was implicated after the State explained its reason for its objection. As a result, the district court made no ruling addressing the Confrontation Clause, and Defendant does not brief any preservation exceptions on appeal. *See State v. Martinez*, 2007-NMSC-025, ¶ 25, 141 N.M. 713, 160 P.3d 894 (declining to address the defendant's Confrontation Clause claim because mentioning "due process" was insufficient to invoke the right to confrontation and did not fairly invoke a ruling on the issue). Therefore, regardless of which statement Defendant challenges, this issue is not preserved, and we decline to address it further.

## III.     Pretrial Confinement Credit

**{40}**    Defendant also argues that this Court should remand with instructions to amend his judgment and sentence  to include pretrial confinement credit. Defendant was arrested in September 2014, but his original charges were dismissed without prejudice in August 2017, after the case was reindicted in January 2017. Defendant argues this Court should remand with instructions to award him credit for his pretrial confinement because his judgment and sentence does not award him any such credit. Defendant concedes that he did not raise this issue below, but argues that failure to award pretrial confinement credit makes his sentence illegal, which this Court may review for the first time on appeal. [3]

**{41}**    NMSA 1978, Section 31-20-12 (1977) provides that "[a] person held in official confinement on suspicion or charges of the commission of a felony shall, upon conviction . . . be given credit for the period spent in presentence confinement against any sentence finally imposed for that offense." "This [C]ourt has held that a convicted defendant may challenge the legality of his sentence for the first time on appeal, because the trial court has no jurisdiction to impose an illegal sentence. However, there must be some solid basis for challenging the sentence in order for an appellate court to take action." *State v. Graham*, 2003-NMCA-127, ¶ 5, 134 N.M. 613, 81 P.3d 556 (internal quotation marks and citations omitted), *rev'd on other grounds*, 2005-NMSC-004, 137 N.M. 197, 109 P.3d 285. "Questions regarding subject matter jurisdiction are questions of law which are subject to de novo review." *State v. Chavarria*, 2009-NMSC-020, ¶ 11, 146 N.M. 251, 208 P.3d 896 (internal quotation marks and citation omitted).

**{42}**    We cannot determine the length of credit Defendant is entitled to from the record before us; therefore, there is no solid basis on which this Court can take action. The record does reflect that Defendant was incarcerated for some period of time before trial, and Defendant is correct that his amended judgment and sentence does not award him any pretrial confinement credit. The State also concedes that Defendant is entitled to some pretrial confinement credit. However, the record is unclear on Defendant's exact length of incarceration. Defendant was also released for a period of time after his arrest and indictment in 2014, further complicating any calculation of length of credit. "It is [the]

---

[3]Defendant asserts that his sentence was illegal without detailed argument or supporting authority. "Issues raised in appellate briefs which are unsupported by cited authority will not be reviewed by us on appeal." *In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329. We therefore decline to address the legality of the sentence imposed by the district court.

defendant's burden to bring up a record sufficient for review of the issues he raises on appeal," *State v. Jim*, 1988-NMCA-092, ¶ 3, 107 N.M. 779, 765 P.2d 195, and Defendant concedes that the amount of credit he should receive is not discernable from the available record.

**{43}** Because we cannot determine how much credit Defendant is entitled to, we cannot remand with instructions to award Defendant credit for pretrial confinement. This determination does not prevent Defendant from filing a habeas corpus petition to further develop this issue. *See* Rule 5-802(A) NMRA ("This rule governs the procedure for filing a writ of habeas corpus by persons in custody . . . for a determination that . . . the district court was without jurisdiction to impose such sentence; or that the sentence was illegal or in excess of the maximum authorized by law or is otherwise subject to collateral attack."). We remind district courts to ensure that judgments and sentences reflect that a defendant is entitled to pretrial confinement credit in compliance with Section 31-20-12.

## IV.    Remaining Arguments

**{44}** Finally, Defendant argues that the prosecutor's comment that Victim "had a healing cut to her hymen" in her closing argument constitutes prosecutorial misconduct. Defendant argues that this comment was contrary to testimony at trial and was a more incriminatory fact, and constitutes prosecutorial misconduct as the equivalent of unsworn testimony. Defendant also argues that, if we find the other alleged error individually insufficient to warrant the granting of a new trial, we should reverse his convictions for cumulative error. We decline to address either of these arguments, and we explain.

**{45}** First, we observe that the prosecutor's challenged statement was not objected to at trial. "When an issue [of prosecutorial misconduct] has not been properly preserved by a timely objection at trial, we have discretion to review the claim on appeal for fundamental error." *State v. Trujillo*, 2002-NMSC-005, ¶ 52, 131 N.M. 709, 42 P.3d 814. We decline to exercise this discretion because Defendant has not adequately briefed this issue for us to conduct review. While Defendant does direct us to the challenged statement, he does not address his lack of preservation, does not brief any preservation exceptions, and does not argue that the prosecutor's statement constituted fundamental error.

**{46}** We also decline to find cumulative error, for we have rejected Defendant's plain error claim that inadmissible hearsay evidence was admitted, and further find Defendant's claim of cumulative error inadequately briefed for our review. Appellate courts are under no obligation to review unclear or undeveloped arguments. *See State v. Guerra*, 2012-NMSC-014, ¶ 21, 278 P.3d 1031.

## CONCLUSION

**{47}** For the foregoing reasons, we affirm Defendant's convictions.

**{48}** IT IS SO ORDERED.

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**SHAMMARA H. HENDERSON, Judge**

**KATHERINE A. WRAY, Judge**